BROCKTON HOSPITAL vs. RATE SETTING COMMISSION &
another.[1]

Suffolk. October 2, 1978. — November 8, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & LIACOS, JJ.

*Hospital. Hospital Service Corporation. Medicare and Medicaid.*

Under a contract between a hospital and Massachusetts Blue Cross,
    Inc., Blue Cross was entitled to share in a cost rebate received by
    the hospital from the Federal government on account of services
    rendered to Medicare patients. [571–572]

CIVIL ACTION commenced in the Supreme Judicial
Court for the county of Suffolk on May 20, 1976.

The case was reported by *Liacos*, J.

*Colette Manoil* for the Brockton Hospital.

*Jeffrey Swope* for Blue Cross of Massachusetts, Inc.

*Carl Valvo*, Assistant Attorney General, for the Rate
Setting Commission.

BRAUCHER, J. In 1972 the Brockton Hospital (hospital)
received a cost rebate, called a nursing salary cost differ-
ential (NSD), from the Federal government on account of
services rendered to Medicare patients in 1969, 1970, and
1971. The Rate Setting Commission (commission) ruled
that Blue Cross, which reimburses the hospital on a cost
basis, was entitled to share in the rebate. In an appeal
pursuant to G. L. c. 176A, § 5, the hospital seeks review
of that ruling. We uphold the decision of the commission.

We summarize the facts established by the pleadings
and by stipulation of the parties. The hospital has been
a provider of hospital services under Medicare and Medi-
caid programs governed by Federal statutes. It has also

[1] Massachusetts Blue Cross, Inc. (Blue Cross).

been a participating hospital under an agreement with Blue Cross. The hospital has received and the commission has approved final settlements under the agreement for fiscal years ending September 30, 1969, 1970, and 1971, with no NSD deduction. On March 5, 1973, the hospital submitted cost data for the fiscal year ending September 30, 1972. After audit by the commission staff, the hospital was notified of the audit adjustment in dispute by an audit report dated March 19, 1975. A calculation of the total amount of adjustment was sent to the hospital with a cover letter dated October 7, 1975. The disputed adjustment constitutes about $14,100 of the total, and it is stipulated that the calculations are mathematically correct. After a staff conference to discuss the hospital's objections, the total adjustment was approved by the commission at a public meeting on April 29, 1976. The hospital was formally notified on April 30, 1976, and it filed its petition for review on May 20, 1976. A single justice of this court reserved and reported the case to the full court without decision.

Blue Cross, Medicare and Medicaid all pay for care on the basis of the lower of the hospital's reasonable costs or its charges, and costs are normally lower than charges. Before 1971 nursing salary costs were allocated among the three by their ratio of patient days. For periods prior to July 1, 1969, Medicare paid an allowance of 2% in lieu of unrecognized costs, and no deduction on that account was made from the costs of Blue Cross. In 1971, the Secretary of Health, Education and Welfare (Secretary) promulgated the NSD regulation, retroactive to July 1, 1969. 36 Fed. Reg. 12,606 (July 2, 1971), as amended, 20 C.F.R. § 405.430 (1977). The Secretary's theory was that aged patients, "on the average, receive inpatient routine nursing care that is more costly on an average per day basis than the average of the remainder of the adult nonmaternity patient population." 20 C.F.R. § 405.430 (c)(1) (1972). The differential was fixed at 8½%, and resulted in payment to the hospital of $63,809 in 1972.

The Blue Cross agreement in effect for fiscal 1972 provided that, in calculating reimbursable costs for any department of the hospital, "all revenues, if any, received by the Hospital from any source attributable to the department shall be deducted . . . ." The commission's regulation number 71-33, effective October 1, 1971, provides for such deductions "to assure that reimbursement for such cost item shall not exceed the total costs incurred by the provider for that item."[2] The same regulation also provides: "10. *Recovery of Expense.* Recovery of expense schedule V-C shall include the eight and one-half percent nursing service differential provided under applicable Medicaid[3] regulations (405.430)." The commission staff simply applied the regulation, consistently with the Blue Cross contract, and the commission approved that action. Under G. L. c. 176A, § 5, all rates of payment to Blue Cross must be approved by the commission and must "reflect reasonable costs" or be "based on charges made to the general public, whichever is lower." It would not "reflect reasonable costs" to reimburse the hospital twice for the same costs, once by Medicare and second time by Blue Cross.

The hospital seems to argue that Federal law somehow required the double reimbursement, quoting a Federal regulation providing that "costs attributable to other patients of the institution are not to be borne by the [Medicare] program." 20 C.F.R. § 405.402 (a) (1977). We should be reluctant to attribute to the Federal authorities a re-

---

[2] "5. *Cost Differential Adjustment Factors.* If the principles of reimbursement or the definition of reimbursable cost applicable to any third party making payment to the provider recognize cost differentials attributable to hospital services which are specifically required, or are required in greater degree than the average, by such third party or by persons on whose behalf such third party makes payment, reduction in the relevant cost item shall be made for other third party payors to assure that reimbursement for such cost item shall not exceed the total costs incurred by the provider for that item."

[3] The regulation number 405.430 makes it clear that "Medicare" rather than "Medicaid" was intended.

quirement of double reimbursement, and their action made it clear that there was no such requirement. A Medicaid regulation, retroactive to July 1, 1969, made for Medicaid costs the same type of deduction made for Blue Cross in the present case. 36 Fed. Reg. 12,621 (July 2, 1971), as amended, 42 C.F.R. § 450.30 (b)(1) (1977).

Finally, the hospital contends that the Medicare payments in issue were attributable to fiscal 1969, 1970, and 1971, and that there was error in making the adjustment with respect to 1972 rates alone. It is clear that an adjustment of the allocation of costs among Blue Cross, Medicare, and Medicaid for one year might result in different dollar amounts from those resulting from an adjustment for another year. But we are not informed as to the calculations, and we have no way of knowing whether the difference would be significant. Absolute precision in such matters is likely to cost more than it is worth, and we think no abuse of the commission's discretion has been shown. Cf. *Employers' Commercial Union Ins. Co.* v. *Commissioner of Ins.*, 362 Mass. 34, 42 (1972) (downward adjustment of current insurance rates to distribute past excess profits).

*Decision affirmed.*