EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY
& others *vs.* COMMISSIONER OF INSURANCE
(and a companion case [1]).

Suffolk.    April 4, 1972. — June 5, 1972.

Present: TAURO, C.J., SPIEGEL, BRAUCHER, & HENNESSEY, JJ.

*Insurance,* Rating, Motor vehicle liability insurance. *Equity Jurisdiction,* Declaratory relief. *Constitutional Law,* Insurance ratings, Due process of law. *Equity Pleading and Practice,* Premature suit.

Two suits in equity by insurers, an association of insurance companies, and a trade association of licensed insurance agents and brokers seeking review of a decision of the Commissioner of Insurance establishing provisionally the 1972 rates for premiums charged on compulsory motor vehicle liability insurance and ordering the insurers to set aside a reserve of thirty-five per cent of the premiums earned on compulsory insurance in 1971 to assure the avail-

---

[1] Massachusetts Association of Independent Insurance Agents and Brokers, Inc. *vs.* Commissioner of Insurance.

ability of funds for redistribution to policyholders of any unfair profits pursuant to St. 1971, c. 977, §§ 1A & 2, were not brought prematurely and presented an actual controversy of a justiciable nature within G. L. c. 231A. [38–39]

St. 1971, c. 977, which requires the Commissioner of Insurance to determine whether the earnings of the insurance companies from compulsory insurance premiums in 1971 resulted in unfair profits and, if so, to direct the companies to return the excess to the policyholders either directly or by a credit on the 1972 premiums did not mandate any unconstitutional taking of property or impairment of contract; the 1971 premiums were provisional and subject to change by reason of an indorsement attached to all 1971 policies which provided for a recomputation of premiums in the event that the rates should be changed by a ruling by the Commissioner and for a return of excess premiums to the insureds, and did not become the property of the companies. [39–40]

An indorsement attached to all 1971 motor vehicle liability insurance policies, which provided that premiums should be "deemed provisional and subject to recomputation" in "the event of any change in the . . . premiums . . . because of a ruling of the Commissioner . . . or an adverse judicial finding as to the constitutionality of any provisions of" St. 1970, c. 670, the "no-fault" plan, did not require, in order to be applicable, a declaration that the "no-fault" plan, or any part of it, was unconstitutional, but was also applicable where the Commissioner had ruled that the 1971 rates were to be changed. [40–41]

St. 1971, c. 977, which allows the Commissioner of Insurance to return to policyholders unfair profits earned by insurance companies from the 1971 compulsory motor vehicle liability insurance premiums by means of a general credit on the 1972 premiums, as an alternative to requiring the companies to refund the excess profits to the policyholders, is not discriminatory or unconstitutional. [41–42]

TWO BILLS IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on December 27, 1971.

The suits were reserved and reported without decision by *Hennessey*, J.

*Herbert P. Wilkins* (*Acheson H. Callaghan, Jr.,* & *G. Lamar Crittenden, Jr.,* with him) for Employers' Commercial Union Insurance Company & others.

*Stephen J. Paris* for Massachusetts Association of Independent Insurance Agents and Brokers, Inc.

*James P. Kiernan,* Assistant Attorney General, for the Commissioner of Insurance.

*Sanford A. Kowal* for the intervener, Consumers' Council of Massachusetts.

HENNESSEY, J.   These two cases were commenced by

the filing in the county court of two bills for review and for declaratory relief. The bills were brought pursuant to G. L. c. 175, § 113B, and G. L. c. 231A to test the validity of St. 1971, c. 977, and the action of the Commissioner of Insurance (Commissioner) pursuant thereto. The single justice consolidated the cases and reported them without decision to the full court.

The plaintiffs in one case are insurance companies authorized to issue motor vehicle liability insurance policies in Massachusetts, and the Massachusetts Automobile Rating and Accident Prevention Bureau, a voluntary, unincorporated association of insurance companies which write automobile casualty insurance in Massachusetts. The plaintiff in the second case is the Massachusetts Association of Independent Insurance Agents and Brokers, Inc., an incorporated trade association of 3,500 licensed insurance agents and brokers in Massachusetts. The Consumers' Council of Massachusetts was allowed to intervene in each case. The issues raised by both bills are the same. The cases are before us on the bills, the answers, and a statement of agreed facts.

We summarize the facts. By St. 1970, c. 670, as amended by St. 1970, c. 744, the Legislature in 1970 established the concept of "no-fault" personal injury protection, effective January 1, 1971. Additionally, c. 670, § 6, mandated that certain automobile insurance rates be reduced by at least fifteen per cent. The insurance companies successfully challenged that reduction with respect to 1971 property damage liability insurance rates. See *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272. Chapter 744, § 3, provided that if any part of the "no-fault" statute was declared unconstitutional, the policyholders would continue to be protected under the former compulsory system. Subsequently, a bill for declaratory relief was filed challenging the validity of c. 670, as amended by c. 744. This court, on June 29, 1971, rejected that challenge and upheld the validity of those statutes. *Pinnick* v. *Cleary*, 360 Mass. 1.

On October 31, 1970, the then Commissioner of Insur-

ance issued a decision and order relating to premium charges for certain 1971 motor vehicle insurance coverages, including compulsory motor vehicle liability insurance, and the premium charges for compulsory insurance set forth in that decision and order were duly filed. These were the compulsory premium charges which were paid in 1971 by policyholders.

Each 1971 compulsory motor vehicle liability insurance policy carried a premium indorsement approved by the then Commissioner. That indorsement is shown in full in a later part of this opinion.

Statute 1971, c. 977, was enacted, and added a new paragraph to G. L. c. 175, § 113B, effective on November 3, 1971. Section 1A of c. 977 requires the Commissioner when establishing rates to determine whether the rates for the current year meet the statutory standards. If such rates do not meet the statutory standards, the Commissioner is to take this factor into account and fix rates for the next year at levels which will meet the statutory standards for the two years taken together.

Section 2 of c. 977 requires the Commissioner to determine, after hearing, whether the earnings of the companies from compulsory insurance in 1971 resulted in an unfair profit and to direct the companies to establish a special reserve if there is an unfair profit. If the Commissioner can determine the extent of the unfair profit by December 1, 1971, he is to direct the companies to return such unfair profit to the policyholders either by direct payment or by a credit on the 1972 policies. If he cannot make such a determination until after December 1, 1971, he is to fix and establish rates for 1972 under c. 175, § 113B, as amended by § 1A of c. 977 of St. 1971, but such rates shall be provisional. At a further hearing in 1972 he is to determine finally the extent of any such unfair profit and to determine finally the rate for 1972. He is then to direct the companies to return such unfair profit to the policyholders or to adjust the rates for 1972 and finalize them.

Following the passage of c. 977 the Commissioner,

after a six-day public hearing in which the plaintiffs and the intervener herein participated, issued a decision on December 13, 1971. The decision was divided into two parts. In Part I the Commissioner fixed and established the rates to be in effect for 1972 independent of the provisions of c. 977. These rates established a 27.6 per cent reduction in 1972 private passenger premium charges, and comparable reductions for other classifications. In Part II the Commissioner set rates for 1972 pursuant to § 1A and § 2 of c. 977, and he also ordered the insurance companies to set aside a special reserve of thirty-five per cent of the premiums earned on compulsory insurance in 1971 to assure the availability of funds to provide for a fair and reasonable sharing of such profits by the policyholders.

1. The intervener argues that these proceedings are premature in that no final determination of the 1972 rates has been made by the decision of the Commissioner dated December 13, 1971, which gave rise to these proceedings. The intervener correctly states that final determination of the rates may give rise to another proceeding later. We observe that no demurrer or motion to dismiss has been filed. In any event, we conclude that these bills were not prematurely filed. The plaintiffs challenge the constitutionality of St. 1971, c. 977, upon which Part II of the Commissioner's decision, anticipating further reduction of 1972 rates, is based. The insurance companies do not have to await final determination of the 1972 rates before seeking review of that part of the decision which provides for further reduction of 1972 rates. Similarly, that part of the Commissioner's decision which ordered the companies to set aside a special reserve of thirty-five per cent, and which the companies contend is itself unconstitutional, may appropriately be reviewed at this time. The bills allege the existence of an actual controversy of a justiciable nature, and the plaintiffs are entitled to a declaration of the rights and obligations in the controversy stated. *Franklin Fair Assn. Inc.* v. *Secretary of the Common-*

*wealth*, 347 Mass. 110, 113.  *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238, 240.

2. The plaintiffs do not challenge the 27.6 per cent reduction in 1972 private passenger premium charges, and other comparable reductions for other classifications, as established in Part I of the Commissioner's decision. [2]  However, they contend that St. 1971, c. 977, is unconstitutional and that any order under c. 977 (as contemplated by Part II of the Commissioner's decision) to refund excessive portions of 1971 premiums would be an unconstitutional taking of property and an unconstitutional impairment of the obligations of contract.  They asert that the 1971 premiums have been earned and are the property of the insurance companies.

In support of their position, the plaintiffs cite the *Opinion of the Justices*, 334 Mass. 711, given to the House of Representatives in May of 1956.  The Justices there considered proposed legislation to require the refunding of that portion of 1956 compulsory premium charges which was attributable to surcharges imposed because of the assessment of demerit points under the Highway Safety Act (G. L. c. 90A, inserted by St. 1953, c. 570, §1).  The Justices concluded that the proposed legislation would be unconstitutional.  They stated: "When the surcharges were paid to the insurance and bonding companies the money became the property of the companies and part of their assets. . . . [T]o create a right to a refund now, as proposed, would be to take away property of the companies and bestow it upon private persons without compensation and for a purpose not public."  334 Mass. at 714.

Contrary to the contention of the plaintiffs, we conclude that no unconstitutional taking of property or impairment of contract will be involved in an adjustment for excessive 1971 premiums, because the rates set for

[2] The Commissioner observes that, from the insurance companies' failure to challenge the order for a 27.6 per cent reduction in 1972 rates, it may be inferred that the companies made at least a 27.6 per cent excess profit from premiums in 1971.

1971 compulsory insurance were provisional and subject to change, and thus did not become the property of the companies.

The 1971 rates were provisional by reason of an indorsement which was approved by the Commissioner, after conference with the insurance companies, and was attached to all 1971 policies. It read as follows: "It is agreed that: In the event of any change in the rules, rates, rating plans, premiums or minimum premiums applicable to the insurance afforded, because of a ruling of the Commissioner of Insurance or an adverse judicial finding as to the constitutionality of any provisions of Chapter 670 of the Acts of 1970 of the Commonwealth of Massachusetts providing for the exemption of persons from tort liability or a restriction on the right to recover damages for pain and suffering, the premium stated in the declarations for Coverages A, B, D and U shall be deemed provisional and subject to recomputation. If the final premium thus recomputed exceeds the premium stated in the declarations, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the excess of such final premium."

We do not agree with the plaintiffs' contention that this indorsement was intended only to provide for a situation where the "no-fault" plan, or any part of it, was declared unconstitutional. Such a construction would fail to give a reasonable meaning to all the provisions of the indorsement, and leave parts of it useless or inexplicable. See *Sherman* v. *Employers' Liab. Assur. Corp. Ltd.* 343 Mass. 354, 356–357. The specific words of the indorsement to which we refer are those which speak of "any change in the . . . rates . . ." because of a ruling of the Commissioner," and those words which state that as to the final premium thus recomputed ". . . if less, the company shall return to the named insured the excess of such final premium."

Clearly the indorsement was to apply to other rulings as well as to constitutional rulings. The Commissioner

could not properly rule upon the constitutionality of the "no-fault" statute. In an opinion dated October 31, 1970, the Commissioner had stated that he would not pass on the constitutionality of a statute. Since the Commissioner could not and would not pass on the constitutional issue, the words "ruling of the Commissioner" in the indorsement referred to some other situation. Additionally, the indorsement provided for a reduction in rates as well as an increase. If the "no-fault" law were held unconstitutional, the rates could only go up. Since the indorsement makes provision for the return of the "excess," it must be concluded that it was intended to encompass just such a subsequent reduction as that provided by St. 1971, c. 977, and Part II of the Commissioner's decision of December 13, 1971.

In view of what we have said above, we need not consider the further argument of the Commissioner that, even as to its effect upon 1971 insurance premiums, c. 977 is constitutional as a valid exercise of the police power of the Legislature, and more particularly the power of the Legislature to regulate insurance rates. See *Opinion of the Justices*, 251 Mass. 569; *Attorney Gen.* v. *Prudential Ins. Co.* 310 Mass. 762; *New England Tel. & Tel. Co.* v. *Department of Pub. Util.* 360 Mass. 443, 453; *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Jordan* v. *American Eagle Fire Ins. Co.* 169 F. 2d 281 (Ct. App. D. C.). Compare *Dept. of Pub. Util.* v. *New England Tel. & Tel. Co.* 325 Mass. 281, 287–288, where allegedly confiscatory rates were stayed, upon condition that the company post a bond to insure the refund to customers of any charges which were later found to be excessive.

3. Finally, the argument is made that, even if it is constitutional to order the return of an excessive rate found to have been charged for 1971, the return must be accomplished by the insurance companies refunding any such excess directly to each and every one of their respective 1971 policyholders in the proper amount, and not by a general reduction in the 1972 rates. The con-

tention is that the option afforded to the Commissioner of ordering a reduction in the rates for the current year is inequitable and discriminatory. For example, a person who was insured in 1971 but not in 1972 will receive no rebate; a person who is insured for 1972 but was not insured in 1971 will receive a rebate; and a person who moves from one rating area to another rating area will receive either a windfall or a penalty depending upon whether he moves from a lower to a higher rating area or from a higher to a lower rating area.

We find nothing discriminatory or unconstitutional in the reducing of the premium rates for the current year in the amount of the excessive premiums charged in the previous year. The adjustment of 1972 rates for excessive profits in 1971 as part of a rate making procedure is no different from using experience of previous years to determine the rate to be set for the future. Statute 1971, c. 977, merely requires the Commissioner in setting rates to add to his normal use of prior experience the procedure of looking at both years together for the purpose of setting fair current rates. In addition, the Legislature, in providing for this alternative method of adjustment, undoubtedly considered the substantial savings in time and expense accomplished by distribution of past excess profits by means of adjusting current rates downward, as opposed to rebate payments to individual policyholders. We conclude that both of the alternative methods provided by the statute are valid, and the Commissioner may invoke either method.

4. A final decree is to enter in each case in the county court declaring that the decision of the Commissioner of Insurance dated December 13, 1971, was valid and proper and does not contravene the constitutional rights of the plaintiffs, and that further proceedings before the Commissioner are to be consistent with this opinion.

*So ordered.*