BOSTON GAS COMPANY *vs.* DEPARTMENT OF PUBLIC
UTILITIES.

Suffolk.   May 7, 1975. — June 4, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Gas Company.   Public Utilities.   Equity Jurisdiction,* Public utilities.
*Constitutional Law,* Due process of law, Public utilities.   *Juris-
diction,* Justiciable question.

This court has no statutory jurisdiction to review a discretionary deci-
sion by the Department of Public Utilities under G. L. c. 164,
§ 94, as amended through St. 1973, c. 816, § 3, to suspend for a
period not longer than ten months proposed interim rates filed by
a gas or electric company [53-54]; jurisdiction may be invoked if a
constitutional basis exists [54].

A failure by the Department of Public Utilities to conduct a hearing
on its suspension pursuant to G. L. c. 164, § 94, as amended
through St. 1973, c. 816, § 3, of proposed interim rates filed by a
gas company intended to cover an existing deficiency and
imminent increased costs resulting from a new collective bargain-
ing agreement, and the department's failure to state its reasons for
such suspension, constituted arbitrary conduct and a denial of pro-
cedural due process to which the company was constitutionally
entitled.   [54-56]

This court, upon deciding in a proceeding in the county court that
a gas company was constitutionally entitled to a hearing by the
Department of Public Utilities on its suspension of proposed inter-
im rates filed by the company or to a statement of its reasons for
the suspension, declined to stay the suspension but ordered the
department to grant a hearing or issue a statement, or both.   [56]

An order by the Department of Public Utilities under G. L. c. 164,
§ 94, suspending for ten months without a hearing or statement of
reasons proposed permanent rates filed by a gas company, was
not a "final decision, order or ruling" from which an appeal to
this court lay under c. 25, § 5; no constitutional basis for invoking
this court's jurisdiction as to the propriety of such suspension was
established.   [56-57]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 6, 1975.

The case was reserved and reported by *Kaplan*, J.

*Hans F. Loeser* (*James K. Brown* with him) for Boston Gas Company.

*Michael Eby*, Assistant Attorney General, for the Department of Public Utilities.

WILKINS, J.   On January 14, 1975, the Boston Gas Company (the company) filed with the Department of Public Utilities (the department) schedules of interim and permanent rates to be effective February 1, 1975.   The company assumed that the department would act under G. L. c. 164, § 94, to suspend the permanent rates in conformity with the department's customary practice. The interim rates were proposed to be effective during any suspension of the permanent rates, subject to refund with interest if later found to be excessive.   The interim rates were intended to recognize only certain assertedly incontrovertible costs of operation not reflected in the company's rates then in effect.   The company proposed an interim rate increase for its Northern Division of about $785,500, an amount considerably less than the revenue deficiency which the department had noted in the rates in effect for the Northern Division one month earlier, on December 13, 1974.   The company also proposed interim rate schedules for its Boston Division, which were intended to reflect an asserted increase in annual expenses of $1,868,700, resulting from a new collective bargaining agreement for certain Boston Division employees, effective January 1, 1975.

The proposed permanent rates would add a considerably larger amount to the company's annual revenues than the amount of the interim increases requested.   The company represented that the proposed permanent rates would increase its annual revenues by approximately $16,700,000.

Two days after the company made its rate filing, the department issued an order suspending the operation of

the interim and permanent rates until December 1, 1975, unless it should order otherwise. This was the maximum period of suspension permitted by statute. G. L. c. 164, § 94. The department held no hearing concerning the suspension of the interim and permanent rates before suspending them, and it scheduled no hearing. It made no findings of fact and issued no statement of reasons for suspending the rates.

On February 6, 1975, the company filed an appeal in the county court from the department's suspension order. The company claimed that the department had failed to comply with its statutory obligations; that the procedures followed by the department denied the company procedural due process of law; and that the action of the department in suspending rates had confiscated the company's property unconstitutionally. The company sought an order (1) allowing it to collect the interim rates pending final decision and (2) directing the department to take prompt action on the permanent rates. The single justice reserved and reported the case to the full court for decision and denied a request for a stay of the department's order, without prejudice to the renewal of the application before the full court.

The department contends that the suspension of rates is committed to agency discretion and thus is beyond judicial review; that the suspension order is not a "final decision, order or ruling" and therefore is not reviewable under G. L. c. 25, § 5; that it complied with the provisions of G. L. c. 164, § 94, in ordering the suspension; and that there has been no abuse of discretion or other violation of law in its suspension of the company's interim and permanent rates.

Section 94 of G. L. c. 164, as amended through St. 1973, c. 816, § 3, provides that "[t]he department . . . may investigate the propriety of any proposed rate, price or charge and may, pending such investigation and decision thereon, . . . suspend the taking effect thereof, from time to time, but not for a period longer than ten months

beyond the time when such rate, price or charge would otherwise become effective." No hearing is required before the entry of any suspension order. The department is not obliged to make any findings of fact or to issue any statement of its reasons for suspending rates. Suspensions may be imposed from time to time, but collectively they may not delay the effectiveness of the rates for more than ten months. The Legislature has thus granted the department discretion to suspend rates without imposing any obligation on the department to create a record which could serve as a basis for judicial review. We conclude that the Legislature did not intend that this court have statutory jurisdiction to review the department's discretionary decision to suspend filed rates.

On the other hand, if the conduct of the department constitutes a violation of procedural due process or if a suspension order results in confiscation of the rate filer's property during the suspension period, a constitutional basis exists for invoking this court's jurisdiction. If the utility asserts that there has been confiscation of its property as a result of agency action, we have a duty to make an independent determination of the facts, and we may enter orders to protect the plaintiff's constitutional rights. See *Lowell Gas Co.* v. *Department of Pub. Util.* 324 Mass. 80, 86-88 (1949), cert. den. 338 U. S. 825 (1949); *New England Tel. & Tel. Co.* v. *Department of Pub. Util.* 327 Mass. 81, 85 (1951); *Opinion of the Justices,* 328 Mass. 679 (1952); *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272, 277-278 (1970). Here we need not determine whether the company has proved that the suspension of the interim rates resulted in confiscation because we have decided that the company was not accorded the procedural rights to which it was entitled constitutionally.

In the circumstances of this case, the department's failure to conduct a hearing or to state its reasons for suspending the interim rates was arbitrary and constituted a denial of procedural due process. See *Milligan* v. *Board*

*of Registration in Pharmacy,* 348 Mass. 491, 496 (1965);
*Ohio Bell Tel. Co.* v. *Public Util. Commn. of Ohio,* 301
U. S. 292 (1937); *Sniadach* v. *Family Fin. Corp. of Bay
View,* 395 U. S. 337 (1969); *Fuentes* v. *Shevin,* 407 U. S.
67, 80-82 (1972); *Atchison, Topeka & Santa Fe Ry.* v.
*Wichita Bd. of Trade,* 412 U. S. 800, 807-808 (1973);
*Goss* v. *Lopez,* 419 U. S. 565 (1975); *North Ga. Fin-
ishing, Inc.* v. *Di-Chem, Inc.* 419 U. S. 601, 606 (1975).
See also *United States* v. *Illinois Cent. R.R.* 291 U. S.
457, 460, 463 (1934).[1] The department's own order of
December 13, 1974, indicated that the rates for the
Northern Division were deficient by more than $1,390,000
a year. If the then filed rates for the Northern Di-
vision had been adequate to cover the deficiency, the
department would have been compelled to approve
them (or some modification of them producing the
revenue needed to meet the deficiency). It is difficult to
believe that a filing of interim rates for the Northern
Division one month later, providing for an annual
increase in revenue considerably less than the amount of
that deficiency, presented a subject requiring any sub-
stantial investigation, particularly a ten-month investiga-
tion.

The circumstances concerning the interim rate proposal
for the Boston Division are not significantly different. On
December 13, 1974, the department determined that the
rates for the Boston Division were inadequate and
authorized the filing of higher rates. Those higher rates
were filed, but they did not reflect the consequences of
any new collective bargaining agreement. These circum-
stances strongly indicated that an immediate adjustment
in rates was necessary when the collective bargaining

---

[1] Compare our decision in *Haverhill Manor, Inc.* v. *Commissioner
of Pub. Welfare, ante,* 15, 26 & n. 13 (1975), where confiscation was
neither claimed nor shown and a prior hearing was not constitution-
ally necessary because the public interest in prompt governmental
action outweighed any harm to the plaintiff from a delay in the re-
ceipt of funds.

agreement became effective on January 1, 1975. Although the calculation of the effect of the new agreement might be subject to investigation, and although any material change from the circumstances disclosed in the recently concluded rate proceeding should be open for consideration, the ten-month suspension of the interim rates for the Boston Division without a hearing, findings of fact, or a statement of reasons was arbitrary on this record.

In these circumstances, the company was constitutionally entitled to a hearing on, or an explanation of, the suspension of its filed interim rates. It is appropriate that such a hearing be held in the first instance by the department. See *Massachusetts Medical Serv.* v. *Commissioner of Ins.* 344 Mass. 335, 339 (1962). For these reasons, on the day this case was argued before us, we entered an order directing the department to grant the company a hearing on its request for interim rates, or to issue a statement of reasons for its action in denying the request, or both.[2]

We decline to order any stay of the department's order suspending the interim rates. The company may bring a new action if the department does not grant interim rate relief as requested. If the department affords the company appropriate procedural safeguards, the issue then before the court will be whether the rejection or suspension of the interim rates results in a confiscation of the company's property.

There is no statutory basis for appealing that portion of the order which suspended the permanent rates because an order within the department's authority under G. L. c. 164, § 94, suspending permanent rates, is not a "final decision, order or ruling" from which an appeal may be taken under G. L. c. 25, § 5. Cf. *Gas & Elec. Commrs.*

---

[2] The order directed that within seven days of the entry of the order any such hearing should be held and concluded as promptly as possible and that any such statement of reasons for its action should be issued.

*of Middleborough* v. *Department of Pub. Util.* 363 Mass. 433 (1973).

Nor has the company established that the suspension of its proposed permanent rates constituted a denial of procedural or substantive due process. Intensive investigation of the rate filing no doubt will be necessary. The company does not argue otherwise. We have no basis on which to conclude that the full ten-month suspension period will not be necessary to permit the department to complete its task or that, if the full period is not needed, the department will not act as soon as possible. Thus there is no constitutional basis for invoking this court's jurisdiction on the question of the propriety of the suspension of the permanent rates.

The willingness of the department to consider interim rate adjustments pending final action on the filed permanent rates, even though interim rate filings are not expressly contemplated by statute, shows the department's awareness that a constitutional problem may exist when rates are suspended. We recognize that the reorganization of the department pursuant to St. 1975, c. 38, may have contributed unavoidably to the delay in consideration of the company's interim rate request.

Judgment should be entered in the county court consistent with this opinion.

*So ordered.*