EDWARD F. ALLEN & another *vs.* BOARD OF ASSESSORS OF GRANBY & another.

Hampshire. May 7, 1982. — August 5, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation,* Real property tax: abatement. *Due Process of Law,* Tax abatement. *Practice, Civil,* Standing.

Taxpayers who had been granted full or partial "hardship" abatements of real estate tax under G. L. c. 59, § 5, Eighteenth, by a municipal board of assessors in four out of six years and had been denied abatements in two of the years, and who alleged that the board, in denying the abatements, had not acted upon ascertainable and objective standards, had standing to challenge the board's denials as violative of their constitutional rights to due process of law. [110]

Since the decision to grant an annual "hardship" abatement of real estate tax under G. L. c. 59, § 5, Eighteenth, was within the discretion of a municipal board of assessors, the expectancy of two taxpayers that such an abatement would be granted or, if granted, would continue in effect, was not an entitlement protected by the taxpayers' constitutional rights to due process of law. [110-112]

CIVIL ACTION commenced in the Superior Court Department on April 27, 1979.

The case was heard by *Cross,* J., and a question of law was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Mary Ellen McCarthy* for the plaintiffs.

*Raymond R. Randall* for the defendants.

NOLAN, J. In this case we are presented with a reported question by a Superior Court judge pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974). The question is: "Were plaintiffs Allen's rights to due process of law under the fourteenth amendment to the United States Constitution and Articles 10 and 12 of part 1 of the Massachusetts constitution violated by the failure of the defendant Board of Assessors of

Granby to promulgate guidelines for their decisions whether or not to grant 'hardship' tax abatements under G. L. c. 59, § 5, Eighteenth?" We answer the question in the negative.

The facts, as reported by the judge, are as follows. At all times pertinent to this lawsuit, the Allens lived in their residence in Granby. Since undergoing surgery in 1974, at the age of 59, Edward Allen has been unable to work. His sole source of income is Social Security and pension benefits. His wife, the plaintiff Leda G. Allen, has spent a great deal of time caring for Edward and thus has been able to work only intermittently.

Beginning in 1976, the Allens applied each year for a real estate tax abatement under G. L. c. 59, § 5, Eighteenth, the so called "hardship exemption," reproduced in the margin.[1] The Allens' combined income, cash assets, the tax assessed, and the abatement granted to them by the assessors for the years 1976-1981, inclusive, were as follows:

| Final Year | Combined Income | Cash Assets | Tax Assessed | Abatement Granted |
|---|---|---|---|---|
| 1976 | $2,686.58 | $316.91 | $1,264.40 | 100% |
| 1977 | 5,176.75 | 247.00 | 1,589.20 | 100% |
| 1978 | 5,331.00 | 228.81 | 1,403.60 | 50% |
| 1979 | 5,651.40 | 228.81 | 1,635.73 | 0 |
| 1980 | 5,946.00 | 271.19 | 1,186.35 | 50% |
| 1981 | 7,323.60 | 513.19 | 1,248.37 | 0 |

[1] General Laws c. 59, § 5, Eighteenth, as appearing in St. 1965, c. 620, § 1, provides in pertinent part: "The following property shall be exempt from taxation . . . Any portion of the estates of persons who by reason of age, infirmity and poverty are in the judgment of the assessors unable to contribute fully toward the public charges." The origin of G. L. c. 59, § 5, Eighteenth, may be traced to Rev. Sts. c. 7, § 5, cl. 8, which exempted from taxation "[t]he polls and estates of persons, who, by reason of age, infirmity and poverty, may in the judgment of the assessors, be unable to contribute towards the public charges." The constitutionality of the hardship exemption was recognized by this court in *Opinion of the Justices*, 195 Mass. 607, 609 (1908). In 1941 the Legislature amended the hardship exemption by requiring repayment by the estates of those property owners who had received abatements under the exemption's provisions. St. 1941, c. 227, §§ 2, 3. In 1965, the repayment provision was repealed. St. 1965, c. 620, § 4.

The Allens brought this action challenging the denials by the board of assessors of Granby (assessors), in whole and in part, of the requested "hardship" tax abatements. Of particular relevance to the reported question is the Allens' allegation that the decisions made by the assessors, based as they were on the assessors' subjective feelings toward the Allens and not on ascertainable and objective standards, violated their rights of due process secured by the United States and Massachusetts Constitutions. The judge reported the question before us after receiving stipulations as to facts and evidence and after argument.

1. *Standing of the plaintiffs.* Initially, the assessors argue that the Allens lack standing to bring their lawsuit. "A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). We think that, by being granted partial abatements in 1978 and 1980 and denied abatements in 1979 and 1981, the Allens have alleged sufficient injury within the purview of G. L. c. 59, § 5, Eighteenth, to acquire standing.

2. *Due process.* In determining whether the plaintiffs must be afforded due process by the assessors, we must turn first to an examination of the interest the plaintiffs wish to have protected. The case hinges on whether the plaintiffs possessed a property interest in their exemption which constituted an entitlement. The governing due process clauses of the United States and Massachusetts Constitution do not create property interests. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972). Property interests created by those rules or understandings may not be eliminated without due process. "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a pur-

pose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Regents of State Colleges* v. *Roth, supra* at 577.

The Supreme Court has recognized a property interest in welfare benefits, *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), Social Security disability payments, *Mathews* v. *Eldridge*, 424 U.S. 319 (1976), employment under certain circumstances, *Perry* v. *Sindermann*, 408 U.S. 593 (1972), drivers' licenses, *Bell* v. *Burson*, 402 U.S. 535 (1971), and public education, *Goss* v. *Lopez*, 419 U.S. 565 (1975). Even if the source of a property right is State law, the State may not declare an interest to be nonproperty for due process purposes if a long-standing practice has established an individual's entitlement to a particular governmental benefit. See *Perry* v. *Sindermann, supra*; *Demorest* v. *City Bank Farmer's Trust Co.*, 321 U.S. 36, 42-43 (1944).

We think that the exemption of G. L. c. 59, § 5, Eighteenth, however, does not come within the rubric of the above cases. Merely because clause Eighteenth may confer a property interest, it does not follow that the assessors need provide due process if such interest does not rise to the level of an entitlement. The Supreme Court articulated the necessity of an entitlement in *Regents of State Colleges* v. *Roth, supra* at 577: "Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Therefore, whether the plaintiffs are entitled to due process depends upon the rules and understandings surrounding their tax exemption.

That the plaintiffs need apply for a new exemption each year is not dispositive. By a literal reading of the statute, the plaintiffs do not lose a benefit each year but simply may not gain one. The plaintiffs do not, by this process, lose their right to any due process to which they would be otherwise entitled. See *Kelly* v. *Railroad Retirement Bd.*, 625

F.2d 486, 490 (3d Cir. 1980) (application for disabled child's annuity under the Railroad Retirement Act must be afforded due process whether at the outset or after receipt of benefits); *Basel* v. *Knebel*, 551 F.2d 395, 397 (D.C. Cir. 1977) (food stamp statute confers upon individuals, even when seeking initial certification, a property interest sufficient to raise due process issue).

The Allens are defeated in their claim to due process, however, because the granting of a hardship abatement is discretionary with the assessors. *Palladino* v. *Assessors of Braintree*, 373 Mass. 665, 667 (1977). *Assessors of Saugus* v. *Baumann*, 370 Mass. 36, 37 (1976). We have said that "discretion negates any claim of entitlement which would mandate the protection of the due process clause." *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 516 (1977). The Allens certainly expected to continue to receive 100% hardship abatements, but because the assessors may make their determination as to such abatements in their discretion, the Allens' expectancy does not rise to the level of entitlement.[2] Cf. *Lotto* v. *Commonwealth*, 369 Mass. 775, 778 (1976).

We thus answer the reported question in the negative and remand the case to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

---

[2] The question whether the assessors abused their discretion has not been reported to us. We note with concern, however, the claim that the assessors made their determination based upon their subjective feelings toward the Allens. Without a complete evidentiary record before us, we cannot be sure of the extent to which such subjective feelings were employed in this case, nor exactly what the term "subjective feelings" implies. Whatever the outcome on the issue of abuse of discretion in the Superior Court, we feel it incumbent upon us to observe that ascertainable standards for the determination of who will receive a hardship abatement, while not constitutionally mandated, would help the assessors make a fair decision in each case. The statute itself furnishes the three criteria which the assessors should consider: age, infirmity and poverty.