LIABILITY INVESTIGATIVE FUND ·EFFORT, INC., & others[1]
*vs.* MASSACHUSETTS MEDICAL PROFESSIONAL INSURANCE
ASSOCIATION & others[2] (and a companion case[3]).

Hampden. April 7, 1994. - July 21, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Insurance*, Medical malpractice insurance. *Statute*, Construction. *Constitutional Law*, Contract clause, Separation of powers. *Due Process of Law*, Insurance regulation, Rate setting.

Article I, § 10, of the· United States Constitution providing that "[n]o State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts," had no applicability to St. 1975, c. 362, § 6, as amended by St. 1980, c. 333, providing for recoupment of deficits sustained by the Massachusetts Medical Professional Insurance Association by means of premium rate increases, where that statute's operation was prospective. [441-443]

Statute 1986, c. 351, enacted as a means to allow the Massachusetts Medical Professional Insurance Association to recover certain medical malpractice insurance premiums it lost as a result of a 1985-1986 rate freeze enacted by the Legislature was, as a legislative act, not subject to a procedural due process challenge; moreover, where that statute's operation affected only certain insurance policies whose premiums were expressly stated to be provisional, no considerations of due process barred retroactive redetermination of the premiums. [443-445]

Statute 1975, c. 362, § 6, as amended by St. 1980, c. 333, which provides for the recoupment of deficits sustained by the Massachusetts Medical Professional Insurance Association through premium rate increases and under which no deficit recoupment rates have yet been determined, does not violate due process by reason of the delay in its implementation inasmuch as those parties from whom recoupment may be sought did not show any confiscation or deprivation of property. [445-448]

[1]Leonard Morse, Juan Penhos, Wayne Glazier, Francis Rockett, J. Gordon Rich, James Boyd, and E. Langdon Burwell, all of whom are physicians.

[2]Commissioner of Insurance and the Commonwealth.

[3]Robert S. Slocum *vs.* Massachusetts Medical Professional Insurance Association & others.

418 Mass. 436.                                      437

Liability Investigative Fund Effort, Inc. *v.* Massachusetts Medical Professional Ins. Ass'n.

The provisions of St. 1986, c. 351, contain no requirement for a "plan of operation" for implementation, and this court declined to infer such a plan in interpreting the statute; accordingly a challenge to the statute for violation of the separation of powers doctrine in art. 30 of the Massachusetts Declaration of Rights, premised on such a requirement, had no merit. [448-449]

Ambiguity found in the provisions of St. 1975, c. 362, § 6, seventh par., as amended by St. 1980, c. 333, with respect to the words "then in effect," as applicable to the "plan of operation" by which deficits sustained by the Massachusetts Medical Professional Insurance Association are recouped, was properly resolved so as to effectuate the Legislature's intent and to give the statute a constitutional construction; thus, recoupment is governed by the plan of operation in effect at the time of recoupment, not at the time the deficits are accrued: accordingly, because there is now a plan of operation in effect, recoupment under that plan will not violate the separation of powers doctrine of art. 30 of the Massachusetts Declaration of Rights. [449-451]

CIVIL ACTIONS commenced in the Superior Court Department on June 2, 1988, and May 3, 1989, respectively.

The cases were heard by *Richard F. Connon,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Henry Mark Holzer,* of New York, for Liability Investigative Fund Effort, Inc., & others.

*Michael J. Lacek* for Massachusetts Medical Professional Insurance Association.

*Eric A. Smith,* Assistant Attorney General, for Commissioner of Insurance & another.

GREANEY, J. In these consolidated cases, the corporate plaintiff and the individual plaintiffs, on behalf of themselves and others similarly situated, bring constitutional challenges to two statutes relating to the provision of medical malpractice insurance by the Massachusetts Medical Professional Insurance Association (MMPIA). Both St. 1975, c. 362, § 6, as amended by St. 1980, c. 333, and St. 1986, c. 351, provide for payments by malpractice insureds for costs incurred by the MMPIA in providing malpractice insurance in past

years. The complaints sought declaratory and other relief to challenge the statutes as violations of the contracts clause of the United States Constitution, Federal and State guarantees of procedural due process, and the separation of powers requirements of art. 30 of the Declaration of Rights to the Massachusetts Constitution. Both the plaintiffs and the defendants moved for summary judgment. See Mass. R. Civ. P. 56 (a), (b), 365 Mass. 824 (1974). A judge of the Superior Court denied the plaintiffs' motion and granted the defendants' motions in a well-reasoned memorandum of decision. We granted the plaintiffs' application for direct appellate review and now affirm.

We first set forth the undisputed facts. In 1975, "to guarantee the continued availability of medical malpractice insurance" in the Commonwealth, the Legislature enacted St. 1975, c. 362, of which § 6 established the Medical Malpractice Joint Underwriting Association of Massachusetts, which is now the MMPIA. The MMPIA was authorized to issue malpractice insurance policies to physicians and hospitals that "[have] made a reasonable effort to obtain insurance and [have] been unable to obtain it." St. 1975, c. 362, § 6, fifth par. The statute stated that the MMPIA's purpose was to provide this insurance "on a self-supporting basis." St. 1975, c. 362, § 6, second par. Toward that end, both the original statute creating the MMPIA and a later statute, St. 1986, c. 351, have provided for the collection by the MMPIA of funds for past, underfunded insurance periods. It is the validity of those two statutes that the plaintiffs challenge here.

The challenged portion of St. 1975, c. 362, § 6, which we will refer to as the deficit recoupment statute, provided as follows:

> "Any deficit sustained by the association in any one year shall be recouped, pursuant to the plan of operation and the rating plan then in effect by [an assessment upon the policyholders, or] a rate increase applicable prospectively [, or both]; provided, however, that in no

event shall a deficit incurred by the association be charged, directly or indirectly, to any person other than the insured under a policy of medical malpractice insurance; and provided, further, that for purposes of this sentence, when deficits sustained on account of physician or hospital malpractice coverage are being recouped, the term 'policyholders' shall mean all those licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through [MMPIA] or not."

St. 1975, c. 362, § 6, seventh par. This paragraph was subsequently repealed and reenacted without the bracketed language. St. 1980, c. 333. During the first dozen years of its operation, the MMPIA did not seek to recoup any deficits under this statute.

In 1987, however, the MMPIA filed a request to begin recouping deficits that accrued in the years 1975-1982. A hearing officer of the Division of Insurance, and subsequently the Commissioner of Insurance (commissioner), determined that if recoupment were ordered, it would be made from all physicians and hospitals, regardless of whether they were insured by the MMPIA. That decision was challenged and affirmed in *Risk Management Found. of Harvard Medical Insts., Inc.* v. *Commissioner of Ins.*, 407 Mass. 498, 503-505 (1990). Subsequently, on February 25, 1991, the parties to that case entered into a stipulation that no requests for recoupment would be made before April 1, 1993. To the present time, no specific determination has been made regarding the MMPIA's deficits, and no rate increase has been established.

The second statute at issue is St. 1986, c. 351, which we will refer to as the deferred premium liability statute. This statute was the eventual result of the MMPIA's recommendation of a 162.7% increase in its premium rates for its 1983 rate year. The commissioner rejected that recommendation and instead allowed only a 42% increase. The MMPIA appealed, and we determined that the commissioner had misinterpreted the applicable statutes, so we ordered further

ratemaking proceedings. *Medical Malpractice Joint Underwriting Ass'n of Mass.* v. *Commissioner of Ins.*, 395 Mass. 43 (1985). The Legislature then froze premium rates at the level of the commissioner's overturned decision. St. 1985, c. 671, § 1. It later extended the freeze to July 1, 1986. St. 1986, c. 37.

On June 6, 1986, the commissioner issued a new decision, raising the 1983 rate 93.9% above the previous year's rate, and raising the 1984 rate 10.9% above the 1983 rate. No appeal was taken from those rate decisions. Later that month the Legislature enacted the deferred premium liability statute as a means to allow the MMPIA to recover premiums it lost as a result of the legislative rate freeze. The operation of the statute was described as follows in a previous decision in this case:

"The statute established a 'total deferred premium liability,' which is a sum representing the difference between the rates set by the commissioner pursuant to c. 175A, § 5A, for the 1983-1985 rate years and the premiums actually paid for the period pursuant to the freeze. The statute provided for recovery of the total deferred premium liability over a five-year period from July 1, 1987, through June 30, 1992, by means of a 'separate rate' added to the normal rate for policies issued during that period. The separate rates were to be assessed and recovered in the same manner as rates established pursuant to c. 175A, § 5A. See St. 1986, c. 351, § 38. The statute did not refer to the deficit recoupment provision of St. 1975, c. 362, § 6, 7th par., discussed above."

*Liability Investigative Fund Effort, Inc.* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.*, 409 Mass. 734, 738-739 (1991).

The plaintiffs challenge the deficit recoupment statute and the deferred premium liability statute on three grounds. First, they argue that the 1980 amendment of the deficit re-

418 Mass. 436                                441

Liability Investigative Fund Effort, Inc. *v.* Massachusetts Medical Professional Ins. Ass'n.

coupment statute violates the contracts clause of the United States Constitution.[4] Second, they contend that the provisions of both statutes for the recovery of funds for past policy periods violate both State and Federal guarantees of procedural due process. Third, they argue that some of the MMPIA's actions under the statutes were taken without having in place the "plan of operation" provided for by St. 1975, c. 362, § 6, and that in the absence of such a plan those actions violate the separation of powers provisions of art. 30 of the Declaration of Rights. We address each of these arguments in turn.

1. The plaintiffs' first argument is that the malpractice insurance policies issued by the MMPIA in 1975-1982, the period for which it seeks recoupment, committed it to contractual obligations that are inconsistent with St. 1980, c. 333. The specific contractual provisions on which the plaintiffs rely are exemplified by the following language in a policy endorsement from 1977: "Any deficit sustained by the [MMPIA] in any one year shall be recouped by an assessment upon all medical malpractice insurance policyholders, whether insured through the [MMPIA] or otherwise." In

---

[4]In their reply brief, the plaintiffs also argue that the deferred premium liability statute violates the contracts clause. This argument, however, was neither considered by the trial judge nor argued by the plaintiffs in their initial brief on appeal, where they challenged only the "prospective rate increases" of St. 1980, c. 333. We therefore need not consider this new argument here. See Mass. R. A. P. 16 (a) (2), 365 Mass. 860 (1974), and 16 (a) (4), as amended, 367 Mass. 921 (1975).

In any event, as is described below in the context of the plaintiffs' due process argument, the plaintiffs' policy agreements with the MMPIA for the years subject to deferred premium liability described the rates for those policies as "provisional." Revision of those rates is therefore not an impairment of contract. See *Weaver* v. *Graham*, 450 U.S. 24, 29-30 (1981) ("Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements"); *Employers' Commercial Union Ins. Co.* v. *Commissioner of Ins.*, 362 Mass. 34, 39-40 (1972) ("[W]e conclude that no unconstitutional . . . impairment of contract will be involved in an adjustment for excessive 1971 premiums, because the rates set for 1971 compulsory insurance were provisional and subject to change, and thus did not become the property of the companies").

light of such provisions, the plaintiffs argue, "an essential term of [the MMPIA] contracts/policies was the method by which, and the pool from which, the [MMPIA] would collect, and the insureds would pay, deficits which might later be recouped"; the contracted-for method was assessment, and the "pool" was the class of policyholders existing at the time the deficits accrued. Therefore, the argument continues, the 1980 amendment providing for recoupment only "by a rate increase applicable prospectively," and the MMPIA's proposal to recoup deficits under that amendment, are inconsistent with the MMPIA's contractual limitation to recoupment by assessment and with the commitment to recoupment from the class of policyholders existing at the time of the contracts. This, the plaintiffs say, violates art. I, § 10, of the United States Constitution, which provides that "[n]o State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts."

Resolution of the plaintiffs' claim is straightforward in light of the provision in St. 1980, c. 333, for "a rate increase applicable *prospectively*" (emphasis added). The contracts clause "applies only to laws with retrospective, not prospective, effect." *Local Div. 589, Amalgamated Transit Union* v. *Commonwealth*, 666 F.2d 618, 637 (1st Cir. 1981) (citing *Ogden* v. *Saunders*, 25 U.S. [12 Wheat.] 213 [1827]), cert. denied, 457 U.S. 1117 (1982). Hence, the clause is inapplicable here. It cannot be the case that by entering into its insurance policies the MMPIA restricted the Legislature's ability to authorize any future deficit recoupment method not specified in the policies.

The plaintiffs simply fail to distinguish between actions taken by the MMPIA under its existing contracts with policyholders and actions taken by the Legislature and the MMPIA regarding the terms of the MMPIA's future contracts. The deficit recoupment statute, St. 1975, c. 362, § 6, as amended by St. 1980, c. 333, specifically provides that the "policyholders" subject to prospective rate increases are "all those licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through

418 Mass. 436          443

Liability Investigative Fund Effort, Inc. *v.* Massachusetts Medical Professional Ins. Ass'n.

[MMPIA] or not." Because the statute thus applies the rate increase to malpractice insureds regardless of whether they have had any contractual relationship with the MMPIA, it is clear that the application of that increase cannot be part of past MMPIA contracts. In fact, the plaintiffs will not themselves be subject to any eventual rate increases under the deficit recoupment statute if they are not insured under malpractice policies in Massachusetts at the time such increases are imposed. See *Risk Management Found.*, *supra* at 505 ("Recoupment liability under c. 333 is one of the many conditions of licensure which the Legislature through its police power may impose on doctors and hospitals").

2. The plaintiffs' second argument is that both St. 1975, c. 362, the deficit recoupment statute, and St. 1986, c. 351, the deferred premium liability statute, violate the procedural due process guarantees of the Federal and State Constitutions. With regard to both statutes, the plaintiffs argue that due process has been violated by "[t]he Commonwealth's undisputed delay in assessing, and in seeking to assess[,] retroactive premiums to collect these deficits."[5] Because the two statutes function differently, we will consider each separately.

We observe preliminarily that we have treated the procedural due process protections of the Massachusetts and United States Constitutions identically. See, e.g., *Allen* v. *Assessors of Granby*, 387 Mass. 117, 119 (1982); *Lotto* v. *Commonwealth*, 369 Mass. 775, 776-777 (1976). In the present case, where the plaintiffs claim that a denial of procedural due process deprived them of property, they must show first that the property interest that they claim was one to which they had an entitlement. See *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972); *Allen* v. *Assessors of Granby*, *supra* at 119. Only if the plaintiffs make such a showing do we need to consider whether the procedures used

---

[5]We need not resolve the parties' heated dispute over whether the effect of the deferred premium liability statute is "really" deficit recoupment. We will consider the operation of the two statutes without relying on the labels applied to them.

meet the requirements of due process. *Lotto* v. *Commonwealth, supra* at 777.

a. The plaintiffs' challenge to the validity of the deferred premium liability statute, St. 1986, c. 351, is subject to several responses. First, although the plaintiffs characterize their challenge as one to the delay created by the statute, it is clear that their challenge is to the Legislature's decisions themselves. The delay in assessing the premiums was expressly imposed by the Legislature in St. 1985, c. 671, and extended in St. 1986, c. 37, and collection of the delayed (deferred) premiums was expressly authorized in St. 1986, c. 351. In general, neither State nor Federal legislative acts are subject to procedural due process challenges. See *Martinez* v. *California*, 444 U.S. 277 (1980); *Bi-Metallic Inv. Co.* v. *State Bd. of Equalization*, 239 U.S. 441, 445-446 (1915). The rationale for this rule is that, regardless of whether a protected property interest is at stake, "the legislative determination provides all the process that is due." *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982). The rule applies specifically to legislative changes in benefits. *Atkins* v. *Parker*, 472 U.S. 115, 129 (1985). Such changes are subject to substantive due process challenge, *id.* ("Such a change must, of course, comply with the substantive limitations on the power of Congress . . . ."), but the plaintiffs here have stipulated to the dismissal of their counts raising such substantive challenges. Hence, their reliance on a procedural challenge is misplaced.

Moreover, the property interest that the plaintiffs claim is in insurance rates that were specifically denoted on the policies as "provisional." The deferred premium liability statute applies to "policies issued on or after July first, nineteen hundred and eighty-three and before July first, nineteen hundred and eighty-six." St. 1986, c. 351, § 38 (1). The policies in the record that were issued in this period all state explicitly that the rates charged in those policies are "provisional."[6]

---

[6]The policy issued to plaintiff Leonard J. Morse on December 13, 1983, contains the following statement: "These rates are provisional and may be

We have previously rejected a challenge to a retroactive reduction in insurance rates where those rates "were provisional and subject to change, and thus did not become the property of the [insurance] companies." *Employers' Commercial Union Ins. Co.* v. *Commissioner of Ins.*, 362 Mass. 34, 40 (1972). Although the claims rejected in that decision were only takings and impairment-of-contract claims, the same result applies more generally to the due process claims cf the plaintiffs here.[7] See *Murphy Nursing Home, Inc.* v. *Rate Setting Comm'n*, 364 Mass. 454, 459 (1973) ("The Constitution of the United States interposes no barrier to retroactive redetermination of provisional or tentative rates," citing *Great N. Ry.* v. *Sunburst Oil & Ref. Co.*, 287 U.S. 358, 362 [1932]), appeal dismissed, 417 U.S. 962 (1974). The deferred premium liability statute does not violate procedural due process.

b. The deficit recoupment statute, unlike the deferred premium liability statute, does not provide expressly for the time at which the statute is to operate. Hence, with regard to the deficit recoupment statute, the plaintiffs can properly argue that "the *delay* in utilizing the existing statute is what violated due process." However, the plaintiffs cite no case that would support a procedural due process claim in these circumstances. Although they cite cases that have accepted challenges to delays, all of those cases involved deprivations of property, either through delays in ending confiscatory

---

adjusted when 1983 rates and class levels are published." The policies issued to Morse on December 11, 1984, and December 12, 1985, both stated that "the premiums stated in the declarations are provisional and are subject to recomputation if the rates fixed and established by the Commissioner of Insurance for use in connection with this policyare [*sic*] revised by order of the Supreme Judicial Court or the Commssioner [*sic*] of Insurance." The latter language is substantially similar to that cited in *Employers' Commercial Union Ins. Co.* v. *Commissioner of Ins.*, 362 Mass. 34, 40 (1972).

[7]The fact that the plaintiffs here are insureds, whereas in *Employers' Commercial Union* they were insurers, is also not significant. The policies provide notice of the provisional nature of the rates to both insurer and insured.

rates or delays in implementing increased benefits decisions.[8] See *Smith* v. *Illinois Bell Tel. Co.*, 270 U.S. 587, 591 (1926) ("Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them"); *MCI Telecommunications Corp.* v. *FCC*, 627 F.2d 322, 341 (D.C. Cir. 1980) ("delay in the resolution of administrative proceedings can . . . deprive regulated entities, their competitors or the public of rights and economic opportunities without the due process the Constitution requires"); *Perez* v. *Lavine*, 378 F. Supp. 1390, 1394-1395 (S.D.N.Y. 1974) ("delay in the delivery of benefits" raises a substantial constitutional question); *Nelson* v. *Sugarman*, 361 F. Supp. 1132, 1134 (S.D.N.Y. 1972) (finding constitutional violation in State's "fail[ure] to implement in timely fashion fair hearing decisions which had upheld their right to increased benefits"). The plaintiffs in effect acknowledge that success of their challenge requires that there have been a deprivation of property, because they argue that, by means of the delay, the MMPIA has imposed "insurance premiums which are so excessive as to be confiscatory."[9] But the delay in deficit recoupment did not result in a confiscation of the plaintiffs' property; instead, by delaying collection, it allowed them to retain for a longer time amounts determined by statute to be due.[10] The only way in which the plaintiffs argue that they were deprived of property due to the delay is that "a sub-

---

[8]An exception is *Railroad Retirement Bd.* v. *Alton R.R.*, 295 U.S. 330 (1935). In that case, however, no issue of procedural due process was raised; the challenged statute was instead held to be a taking. See *id.* at 350 ("Thus the Act denies due process of law by taking the property of one and bestowing it upon another"). In the present case the plaintiffs have stipulated to the dismissal of their takings claims.

[9]The plaintiffs also argue that due process has been violated by MMPIA's imposition of the deficit recoupment rates "retroactively." However, as we concluded in the discussion of the plaintiffs' contract clause claims, the deficit recoupment statute is not retroactive.

[10]The plaintiffs do not argue in this appeal that the rates charged by the MMPIA, either originally or with the yet-to-be-determined prospective rate increases, are in themselves confiscatory; they argue only that the delay resulted in confiscation of their property.

418 Mass. 436                                                447

Liability Investigative Fund Effort, Inc. v. Massachusetts Medical Professional Ins. Ass'n.

stantial new financial obligation has been added because there is a potentially smaller ratepayer base available to pay the prospective rate increases."[11] However, they offer no evidence of the relative numbers of policyholders in 1975-1982, and the present, so this claim is purely speculative, and they have raised no genuine issue of fact. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

The plaintiffs point to one of our previous decisions, *Workers' Compensation Rating & Inspection Bureau* v. *Commissioner of Ins.*, 391 Mass. 238, 269 (1984), as support for their argument. Although that case denied the plaintiffs' claims of a violation of due process, it said that "[u]njustified delays in acting on proposed rates may in some circumstances constitute a denial of procedural due process." *Id.* at 269. However, the cases cited by the *Workers' Compensation Rating & Inspection Bureau* decision make clear that those circumstances are not present here. In one of the cases cited, *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 51 (1975), we found a violation of procedural due process where the administrative agency involved had failed to provide a hearing regarding a delay in instituting new rates. *Id.* at 54-55. In the present case, however, the plaintiffs do not challenge the process used to determine deficit recoupment rates; indeed, no deficit recoupment rates have yet been determined. Instead, they challenge the fact of the MMPIA's de-

---

[11]The plaintiffs do argue that, because any eventual deficit recoupment will occur after the time at which the deficits accrued, they will be unable to pass on the costs of deficit recoupment to their patients of that earlier time. However, that result is a consequence of the legislative decision to effect deficit recoupment through prospective rate increases applied to policyholders at the time of recoupment, rather than to those who were policyholders at the time the deficits accrued; it would be the case regardless of the delay in deficit recoupment.

The plaintiffs also claim that the very existence of deficit recoupment, which requires policyholders collectively to eventually pay all the costs of their malpractice claims, means that they were deprived of an interest "in purchasing real insurance and in getting the value of what they have bought." Insurance, however, involves not just the shifting of risk from insured to insurer, but also risk-sharing among insureds. The fact that the MMPIA will not suffer losses does not deprive the plaintiffs of insurance.

lay in seeking the deficit recoupment. Such a challenge is not supported by *Boston Gas*, which mentioned a constitutional problem as the result of delay itself only where "there has been confiscation of . . . property as a result of agency action." *Id.* at 54.[12] Here, as described above, the plaintiffs have shown no confiscation, and have therefore shown no violation of due process.

3. The plaintiffs' final claim is that the MMPIA has not complied with the requirements in St. 1975, c. 362, § 6, that the MMPIA have in place a "plan of operation." The plaintiffs point to the statute's direction that "[t]he commissioner shall, after consultation with the [MMPIA] . . . and other affected individuals and organizations promulgate a plan of operation," St. 1975, c. 362, § 6, fourth par., and to the following portion of the deficit recoupment statute:

> "Any deficit sustained by the association in any one year shall be recouped, pursuant to the plan of operation and the rating plan then in effect by a rate increase applicable prospectively . . . ."

St. 1975, c. 362, § 6, seventh par., as amended by St. 1980, c. 333. It is undisputed that the commissioner promulgated a plan of operation effective June 27, 1975, but that the plan terminated by its own terms on December 31, 1977. A new plan was promulgated on June 15, 1991.

The plaintiffs therefore allege that there was no plan of operation in place between January 1, 1978, and June 15, 1991. They argue that any actions taken by the MMPIA in the absence of such a plan are invalid as a violation of the doctrine of separation of powers in art. 30 of the Declaration

---

[12]The other two cases cited by the *Workers' Compensation Rating & Inspection Bureau* decision are to the same effect. *Warner Cable of Mass., Inc.* v. *Community Antenna Television Comm'n*, 372 Mass. 495 (1977), relies on *Boston Gas Co.* v. *Department of Pub. Utils.*, 368 Mass. 51 (1975), and *Smith* v. *Illinois Bell Tel. Co.*, 270 U.S. 587 (1926), is discussed above.

418 Mass. 436                                    449

Liability Investigative Fund Effort, Inc. *v.* Massachusetts Medical Professional Ins. Ass'n.

of Rights.[13] As with their procedural due process claim, the plaintiffs argue that the absence of a plan of operation invalidates actions taken under both the deferred premium liability and deficit recoupment statutes, and we discuss each statute separately.

a. The plaintiffs do not argue that the deferred premium liability statute, St. 1986, c. 351, itself requires a plan of operation. They argue instead that a plan of operation is necessary because "deferred premium liability is merely deficit recoupment under a different name," and that it therefore requires a plan of operation as provided in the deficit recoupment statute. However, regardless of what deferred premium liability really "is," we must interpret the deferred premium liability statute as it is written. The plaintiffs point to no reference to a "plan of operation" in St. 1986, c. 351, or in either St. 1985, c. 671, or St. 1986, c. 37, the two statutes that imposed the deferral of the eventual rate increases. On the contrary, St. 1986, c. 351, itself provides in detail the terms for the recovery of deferred premium liability. The statute directs the commissioner to calculate "separate rates" to be collected in equal amounts in the four rate years from July 1, 1987, to June 30, 1991, and states that the separate rates "may be assessed and recovered with respect to policies of medical malpractice insurance issued during said periods by the [MMPIA] in the same manner as rates established pursuant to [G. L. c. 175A, § 5A] are assessed and recovered." St. 1986, c. 351, § 38 (3). These provisions describe the means for collecting deferred premiums, they impose no requirement of a plan of operation, and we will not infer one.

---

[13]Article 30 provides:

"In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

b. As described above, the deficit recoupment statute provides in relevant part:

"Any deficit sustained by the association in any one year shall be recouped, pursuant to the plan of operation and the rating plan *then in effect* by a rate increase applicable prospectively . . ." (emphasis added).

St. 1975, c. 362, § 6, seventh par., as amended by St. 1980, c. 333. The plaintiffs argue that the emphasized language requires that the MMPIA recoup deficits by applying the plan of operation in effect at the time the deficits accrued. The judge, however, "decline[d] to read the language in that manner and conclude[d] that another reasonable interpretation of the statute would read this same language as requiring the [MMPIA] to employ the plan in effect at the time of recoupment." Although we recognize that the statute as written is ambiguous, we think that the judge's interpretation is the more sensible.

As described above, the operation of the deficit recoupment statute is purely prospective, so it would be anachronistic for the terms of that recoupment to be governed by past plans of operation. Recoupment will be made from those who are medical malpractice policyholders at the time of the recoupment, not at the time the deficits are accrued, as described above, and it would be unreasonable to require the MMPIA, and policyholders, to refer to past plans of operation to determine the method of recoupment. Moreover, such an interpretation would introduce needless complication if the plans for past years differed and, as here, deficits were to be recouped for several different years. We conclude that the better reading of the statute is that deficit recoupment is to be governed by the plan of operation in place at the time of the recoupment. This construction effectuates the Legislature's intent, see *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982), and gives the statute a constitutional construction, see *Ferguson* v. *Commissioner of Corps. & Taxation*, 316

Mass. 318, 322-324 (1944). Because there is now a plan of operation in effect, recoupment under that plan will not violate the separation of powers provision of art. 30.

4. In sum, neither the deficit recoupment statute, St. 1975, c. 362, § 6, as amended by St. 1980, c. 333, nor the deferred premium liability statute, St. 1986, c. 351, violates the contracts clause of the United States Constitution, State or Federal guarantees of procedural due process, or the separation of powers requirements of art. 30 of the Declaration of Rights. The amended summary judgment and the amended partial summary judgment, both entered on July 30, 1993, are affirmed.

*So ordered.*