ELIZABETH MANCUSO & another[1] vs. MASSACHUSETTS
INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC.

Norfolk. October 6, 2008. - January 23, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

Constitutional Law, Sports, Equal protection of laws, Education. Due Process
of Law. Civil Rights, Availability of remedy. Words, "Threats," "Intimida-
tion," "Coercion."

In a Superior Court action alleging, inter alia, Federal civil rights violations
arising from a decision of the Massachusetts Interscholastic Athletic As-
sociation (defendant) denying the plaintiff student a waiver to allow her to
compete as a member of her high school swim team during her senior
year, the judge did not err in granting judgment notwithstanding the verdict
in favor of the defendant, where the plaintiff failed to demonstrate that she
had a protected property interest, either as part of her recognized right to
public education or under the defendant's eligibility rules, in participating
in interscholastic athletics [122-128], or that the defendant had violated her
Federal equal protection rights as a "class of one" by arbitrarily singling
her out for worse treatment than other similarly situated persons [128-130].

In a Superior Court action alleging, inter alia, State civil rights violations
based on the plaintiff's claim that the rules of the Massachusetts Inter-
scholastic Athletic Association (defendant) were intended to discourage the
exercise of her right to seek judicial review of the defendant's decision
denying the plaintiff a waiver to allow her to compete as a member of her
high school swim team during her senior year, the judge did not err in
granting a directed verdict in favor of the defendant, where the plaintiff
failed to demonstrate that those rules amounted to threats, intimidation, or
coercion under the State civil rights act. [130-133]

This court dismissed a cross-appeal where the party seeking the appeal failed
to pay the required docket fee. [133-134]

CIVIL ACTION commenced in the Superior Court Department
on October 10, 2003.

Motions for partial judgment on the pleadings and for sum-
mary judgment were heard by Isaac Borenstein, J., and the case
was tried before Elizabeth Bowen Donovan, J.

---

[1]Stanice Mancuso, as mother and next friend of Elizabeth Mancuso. Elizabeth
Mancuso was a minor when the underlying action was commenced, but is
now an adult.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul J. Klehm* (*James B. Krasnoo* with him) for the plaintiffs.

*James P. Long* for the defendant.

The following submitted briefs for amici curiae:

*William E. Quirk & Anthony W. Bonuchi* for National Federation of State High School Associations.

*Peter M. Kelley & Stephen J. Finnegan* for Boston Public School Department & another.

*Martha Coakley*, Attorney General, *& Sookyoung Shin*, Assistant Attorney General, for the Commonwealth.

*Michael J. Long & Amy L. Leuchte* for Massachusetts Association of School Superintendents.

COWIN, J. The plaintiff, Elizabeth Mancuso, claims that she has a property interest in participating in interscholastic athletics as a member of her high school swim team. She contends that the defendant Massachusetts Interscholastic Athletic Association (MIAA) deprived her of that property interest without due process, and that such deprivation entitles her to relief under the Federal and State civil rights laws. The plaintiff also maintains that the defendant violated her right to equal protection as a "class of one" by denying her eligibility under its so-called "fifth year student rule."[2] She claims the defendant unfairly declared her ineligible because of her participation in a private swimming club, while others who also swam in such clubs were not deemed ineligible. In addition, the plaintiff argues that the MIAA has promulgated rules intended to discourage the exercise of her right to seek judicial review of the MIAA's decision, and that these rules amount to "threats, intimidation or coercion" in violation of her rights under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H, 11I.

We conclude that the plaintiff has no property interest in

[2]Rule 59.1 of the Massachusetts Interscholastic Athletic Association Rules and Regulations Governing Athletics (as in effect July 1, 2001, through June 30, 2003) (MIAA rules) provides as follows:

"A student shall be eligible for interscholastic competition for no more than 12 consecutive athletic seasons (i.e. four consecutive years) beyond the first completion of grade 8."

participating in interscholastic athletics, and thus no due process rights in the circumstances. Furthermore, the plaintiff has not shown that she was treated differently from other similarly situated students, or that this alleged differential treatment resulted from a gross abuse of power or fundamental procedural unfairness on the part of the MIAA. Thus, the plaintiff has failed to establish the existence of an equal protection violation. Finally, we conclude that the MIAA's rules do not amount to "threats, intimidation or coercion" that is actionable under the Massachusetts Civil Rights Act.[3]

*Facts and prior proceedings.* We recite the facts that the jury could reasonably have found from the evidence at trial, reserving certain details for later discussion in connection with the issues raised. At the end of her freshman year at the Austin Preparatory School (Austin) during the 1999-2000 academic year, the plaintiff (who had started school a year earlier than most of her peers) repeated the ninth grade at Andover High School (Andover).

The plaintiff has been a competitive swimmer since she was eight years old. During her freshman year at Austin, the plaintiff did not swim for the school's team, but was a member of a private swimming club. When the plaintiff transferred to Andover for her second freshman year in the fall of 2000, the plaintiff joined the school's varsity swim team. The plaintiff was one of the faster swimmers on that school's swim team, which is regarded as one of the most successful in Massachusetts. Indeed, the plaintiff was considered one of the fastest high school swimmers in the Commonwealth.

The plaintiff continued to compete with the Andover swim team during the fall athletic seasons[4] of her sophomore and junior years. Shortly before the plaintiff's senior year, the MIAA,[5] an association that regulates competitive interschool athletic pro-

---

[3] We acknowledge the amicus briefs in support of the MIAA filed on behalf of the Attorney General; the Boston Public School Department and the Massachusetts Association of School Committees, Inc.; the Massachusetts Association of School Superintendents; and the National Federation of State High School Associations.

[4] Girls' swimming is a fall sport in the league to which Andover's team belongs.

[5] "Virtually all public secondary schools in the Commonwealth are members

grams as the authorized representative of its member school committees,[6] deemed her ineligible to compete that year pursuant to its "fifth year student rule." See note 2, *supra*. Andover Principal Peter Anderson, on behalf of the plaintiff,[7] applied to the MIAA, requesting a waiver allowing her to compete during her senior year.[8] The request was denied in May of 2003 by Assistant Director Brian Halloran, the MIAA's eligibility officer. Principal Anderson, again on behalf of the plaintiff, appealed this decision according to the MIAA's internal review process, taking the matter first to a three-member subcommittee of the MIAA's Eligibility Review Board (ERB). Following a hearing where the plaintiff was represented by Principal Anderson and gave testimony, the ERB unanimously upheld Halloran's initial decision. Principal Anderson next appealed to the Massachusetts Interscholastic Athletic Council (MIAC), the final reviewing entity in the MIAA's waiver appeals process. The MIAC upheld the denial of the waiver.

On October 10, 2003, the plaintiff commenced this action in the Superior Court and filed a motion for a temporary restrain-

---

of MIAA and, by virtue of what is in effect a delegation of authority by local school committees under G. L. c. 71, § 47, MIAA governs and regulates competitive sports among these schools. Some private secondary schools are likewise members and enter into the same competition." *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Ass'n*, 378 Mass. 342, 345 (1979) (footnote omitted).

[6]General Laws c. 71, § 47, provides, in pertinent part:

"The committee may supervise and control all athletic and other organizations composed of public school pupils and bearing the school name or organized in connection therewith. It may directly or through an authorized representative determine under what conditions the same may compete with similar organizations in other schools."

[7]Rule 84.1 of the MIAA rules provides, in pertinent part, that "[a]ny request for the waiver of any eligibility rule on behalf of an individual student must be made by the principal."

[8]Rule 84.2 of the MIAA rules provides as follows:

"The MIAA Executive Director or his/her designee shall have authority to set aside the effect of any eligibility rule upon an individual student if (1) the rule fails to accomplish the purpose for which it is intended, (2) the rule works an undue hardship on the student, (3) granting the waiver will not cause an unfair competitive advantage, and (4) granting the waiver will not displace another student-athlete."

ing order to allow her to compete during her senior year despite the MIAA's determination of ineligibility. Her complaint was in four counts. Count I sought relief in the nature of certiorari (pursuant to G. L. c. 249, § 4)[9] from the adverse decision of the MIAA. In this count, the plaintiff asked the court to vacate the MIAA's denial of the waiver and to reinstate the plaintiff as a member of the Andover swim team. Counts II and III claimed that the MIAA had violated the plaintiff's civil rights[10] and requested an award of compensatory and punitive damages in addition to an award of attorney's fees and costs. See 42 U.S.C. §§ 1983 & 1988 (b) (2000); G. L. c. 12, §§ 11H & 11I. Count IV sought declaratory relief under G. L. c. 231A.[11] On October 23, 2003, a Superior Court judge granted a preliminary injunction,[12] and the plaintiff competed for the Andover swim team for the remainder of the fall 2003 season.[13]

---

[9]General Laws c. 249, § 4, provides, in pertinent part: "A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court . . . ."

[10]Specifically, the plaintiff alleged in her complaint that the MIAA had unlawfully "infring[ed] upon various rights of [the plaintiff], including, without limitation, her right to participate fully in her public education, her rights of privacy, her right to an education, her right to counsel, her due process and equal protection rights, her right to be free from intimidation, her right to a fair hearing, and her right to be left alone."

[11]Among other things, the plaintiff requested the Superior Court to issue declarations that rule 29.2 of the MIAA rules (providing that "any contest in which an ineligible student or coach participates under court order will be forfeited if the order is dissolved or the plaintiff ultimately fails to prevail") is unconstitutional, on its face or as applied, and must be struck; that rule 29.3 of the MIAA rules (providing that "[s]tudent or teams that have gained court injunctions forcing their entry into MIAA tournaments will be seeded last") is unconstitutional, on its face or as applied, and must be struck; that rule 84 of the MIAA rules (governing the MIAA's waiver appeals process) is unconstitutional; and that the plaintiff "is eligible to participate as a full member of the [Andover] girls' swim team during the Fall of 2003."

[12]The judge treated the plaintiff's motion for a temporary restraining order as a request for a preliminary injunction.

[13]Although the plaintiff was allowed to compete during the fall swimming season of her senior year, the case is not moot because she seeks damages for the MIAA's alleged invasion of her statutory rights. See Boulanger v. Dunkin' Donuts, Inc., 442 Mass. 635, 639 n.8 (2004), cert. denied, 544 U.S. 922 (2005).

Prior to trial, the plaintiff moved for partial judgment on the pleadings on count I (certiorari), and the MIAA filed a cross motion for summary judgment on all counts. The plaintiff responded to the MIAA's cross motion by filing her own cross motion for summary judgment on counts II through IV. The same Superior Court judge who issued the preliminary injunction granted the plaintiff's motion for partial judgment on the pleadings on count I (certiorari) of her complaint, concluding that the MIAA's decision to deny the waiver was "arbitrary and capricious." The judge denied summary judgment for both parties on counts II through IV, thereby allowing the plaintiff's claims for Federal and State civil rights violations and for declaratory relief to proceed to trial.[14]

The case was tried before a jury in the Superior Court. At the close of the plaintiff's case, which was also the close of all the evidence, the MIAA moved for directed verdicts on all counts. The trial judge[15] granted the MIAA's motion with respect to all the plaintiff's claims except her § 1983 claim based on the alleged violation of due process. The judge reserved the question whether the plaintiff had a property interest in her participation in interscholastic athletics, and submitted the § 1983 claim to the jury. The jury were asked to decide (1) whether the MIAA had afforded the plaintiff due process; (2) if not, then what (if any) compensable harm the plaintiff had sustained; and (3) whether the MIAA's conduct, if unlawful, was sufficiently malicious and intentional to warrant an award of punitive damages. The jury returned a special verdict in the plaintiff's favor, finding that the MIAA had failed to provide the plaintiff with due process and awarding the plaintiff compensatory damages in the amount of $10,000. The jury declined to award punitive damages. The MIAA then moved for judgment notwithstanding the verdict (judgment n.o.v.), which the judge granted, ruling that the plaintiff had "no constitutionally protected interest in the right to participate on the

---

[14]On April 13, 2004, the plaintiff amended her complaint to include a breach of contract claim as count V. The MIAA moved for summary judgment on this claim as well, and the same judge granted its motion. The plaintiff has not appealed this decision and it is not before us.

[15]The judge who presided over the trial was different from the one who granted injunctive relief and ruled on the parties' cross motions for summary judgment.

swim team" that would entitle her to pursue a due process claim under § 1983.

The plaintiff appealed from the judgment of the Superior Court on her civil rights claims, and the MIAA cross-appealed from the entry of judgment on the pleadings on the certiorari count of the plaintiff's complaint. We transferred the case to this court on our own initiative. We conclude that there was no error in the allowance of either the directed verdicts or judgment n.o.v. in favor of the MIAA. We also conclude that the MIAA's cross appeal is not properly before us, and order it dismissed for reasons we shall discuss.

*Discussion.* We apply the same standard in reviewing a motion for a directed verdict that we apply to a motion for judgment n.o.v., both of which are at issue here. See *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 100 (1987), quoting *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 657 (1978). In deciding whether either motion was properly allowed, "[we] must determine, on viewing the evidence in the light most favorable to the nonmoving party, whether a reasonable inference could be drawn in favor of the nonmoving party, or if the moving party is entitled to a judgment as a matter of law." *Donaldson* v. *Farrakhan*, 436 Mass. 94, 96 (2002).

1. *The § 1983 claim.* The plaintiff claims that she is entitled to recover under 42 U.S.C. § 1983 for damages resulting from the MIAA's infringement of her Federal civil rights. As the text of the statute[16] makes clear, "two elements . . . are necessary for recovery. First, the plaintiff must prove that the defendant

---

[16]Title 42 U.S.C. § 1983 (2000) provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

has deprived [her] of a right secured by the 'Constitution and laws' of the United States . . . . Th[e] second element requires that the plaintiff show that the defendant acted 'under color of law.' " *Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Generally, "conduct satisfying the state-action requirement of the Fourteenth Amendment [to the United States Constitution] satisfies the statutory requirement of action under color of state law." *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982).

We have previously decided that the MIAA is a State actor. See *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Ass'n*, 378 Mass. 342, 349 & n.18 (1979) ("[t]he parties agree, and we concur, that [the MIAA's rules] must be viewed as 'State action' for legal purposes"). The only issue on appeal[17] regarding the validity of the plaintiff's claims under § 1983 is whether the MIAA has deprived her of any "rights, privileges, or immunities secured by [Federal law]." 42 U.S.C. § 1983. The plaintiff argues that she has been deprived of two Federal constitutional rights and that either deprivation is sufficient to support a § 1983 action. First, the plaintiff argues that she has a property interest in her participation in interscholastic athletics that arises either under State law or under the rules governing interscholastic athletics promulgated by the MIAA, and that the MIAA has deprived her of this interest without due process[18] in violation of her rights under the Fourteenth Amendment. Alternatively, the plaintiff contends that the MIAA treated her differently from other students

---

[17]We consider only the plaintiff's appeal from the decisions of the trial judge allowing the MIAA's motions for judgment n.o.v. on the § 1983 due process claim and for directed verdicts on the equal protection and Massachusetts Civil Rights Act claims. The other theories of recovery advanced by the plaintiff in the trial court, see note 10, *supra*, are not raised in this appeal.

[18]In particular, the plaintiff argues that the hearing process employed by the MIAA was inadequate because Brian Halloran, the MIAA's eligibility officer who made the initial decision to deny the waiver, spoke to other MIAA staff regarding the official interpretation of the MIAA's rules while considering individual waiver requests. The plaintiff also faults Halloran for speaking to outside sources to determine the policy of the Andover girls' swimming coach with respect to the selection of team members. Finally, she claims the hearing process was unfair because the MIAA investigated and sanctioned Andover in a different matter concerning the plaintiff's eligibility during the fall 2001 season, which was brought to the attention of those responsible for reviewing Halloran's decision to deny the waiver.

who participate in both interscholastic swimming and in private swimming clubs by denying her one year of eligibility, and that this differential treatment violated her rights as a "class of one"[19] under the equal protection clause of the Fourteenth Amendment.[20] We discuss each of these arguments in turn.

a. *Property interest under the due process clause.* To prevail on her due process claim, the plaintiff must show that she has been deprived of a "property" interest within the meaning of the Fourteenth Amendment. Property interests "are not created by the [Federal] Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972).

The plaintiff argues that she has a "legitimate claim of entitlement," see *id.*, to her participation in interscholastic athletics under State law, as an implied "outgrowth" of her recognized right to an education, which includes physical education.[21] See *Doe* v. *Superintendent of Schs. of Worcester*, 421 Mass. 117, 128-129 (1995) (recognizing existence of right to public education under Massachusetts Constitution). See also *Goss* v. *Lopez*, 419 U.S. 565, 573-574 (1975) (State law right to public education

---

[19]The alleged "class of one" here consists of the plaintiff herself, insofar as she claims "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000). As we discuss *infra*, such allegations, if proved, may serve as the basis of a valid equal protection claim, because "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.*, quoting *Sioux City Bridge Co.* v. *Dakota County*, 260 U.S. 441, 445 (1923).

[20]The plaintiff does not appeal the trial judge's decision granting directed verdicts on the other Federal civil rights violations alleged in her complaint, see note 10, *supra*. Regarding the State civil rights violations alleged, as we discuss in greater detail *infra*, the plaintiff argues here only that the MIAA has attempted to interfere with her right to seek judicial review of its decision and her right of access to the courts by means of "threats, intimidation or coercion."

[21]General Laws c. 71, § 3, provides, in pertinent part: "Physical education shall be taught as a required subject in all grades for all students in the public schools for the purpose of promoting the physical well-being of such students."

is property interest protected by due process clause). In the alternative, the plaintiff claims that, having participated for three years on the Andover swim team, she has a property interest created by the MIAA's eligibility rules because her receipt of a long-standing benefit (i.e., eligibility) supports a reasonable expectation that the benefit will continue. See *Allen* v. *Assessors of Granby*, 387 Mass. 117, 120 (1982). See also *Perry* v. *Sindermann*, 408 U.S. 593, 601 (1972) (property interest found "if there are such rules or mutually explicit understandings that support [the person's] claim of entitlement to the benefit").

The United States Supreme Court has held that, where the right to a public education exists under State law, a student has a property interest that prevents a school from "total[ly] exclu[ding] [the student] from the educational process" without due process of law. See *Goss* v. *Lopez*, *supra* at 576. Because all children in the Commonwealth have a constitutional right to a public education, see *McDuffy* v. *Secretary of Executive Office of Educ.*, 415 Mass. 545, 621 (1993), it is clear under *Goss* that no State actor could deny the plaintiff a public education without complying with the requirements of the due process clause.

However, the right to a public education, even one with a mandatory physical education component, is not synonymous with the right to participate in extracurricular activities, such as interscholastic athletics. Although such activities may serve as a beneficial supplement to required physical education, they are by their nature separate from that curriculum. Practices and competitions for interscholastic athletic teams generally take place outside of regular school hours and, as is true for Andover's swim team, may take place in nonschool facilities. The provisions of G. L. c. 71 do not confer an individual right to participate in interscholastic athletics, even as an "outgrowth" of the right to a public education.

Like many other courts that have considered this question, we do not expand the contours of a student's property interest in public education to include within it every extracurricular activity that might enrich the educational experience, however meaningful those activities might be to individual students. See, e.g., *Ryan* v. *California Interscholastic Fed'n-San Diego Section*, 94 Cal. App. 4th 1048, 1063 (2001); *Proulx* v. *Illinois High Sch.*

*Ass'n,* 125 Ill. App. 3d 781, 786-787 (1984); *Adamek* v. *Pennsylvania Interscholastic Athletic Ass'n,* 57 Pa. Commw. 261, 263-265 (1981) (collecting cases). "The myriad activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution. Otherwise, removal from a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process." *Dallam* v. *Cumberland Valley Sch. Dist.,* 391 F. Supp. 358, 361 (M.D. Pa. 1975).

The plaintiff directs our attention to a number of cases which she claims support the existence of such a right. Only one of these cases explicitly does so, and that case contains no discussion of the reasons for its conclusion. See *Stone* v. *Kansas State High Sch. Activities Ass'n,* 13 Kan. App. 2d 71, 76 (1988). We decline to follow it. The other cases cited by the plaintiff either fail to provide clear support for the claimed proposition,[22] or are readily distinguishable because of significant differences from Massachusetts law. See *Duffley* v. *New Hampshire Interscholastic Athletic Ass'n,* 122 N.H. 484, 492 (1982) (agency regulations explicitly deemed student activities, including athletics, part of curriculum). Accordingly, we reject the plaintiff's contention that her property interest in her right to public education implies that she also has a property interest in her participation in extracurricular activities.

The plaintiff does no better by construing the source of her property interest to be the MIAA's eligibility rules. To the extent the MIAA's eligibility rules create any property interest in

---

[22]The cases cited by the plaintiff follow: *Arkansas Activities Ass'n* v. *Meyer,* 304 Ark. 718, 722-725 (1991) (although "there is clearly no constitutional right to play sports or engage in other school activities," rules may create one, but no violation of equal protection or due process in any event); *Kaptein* v. *Conrad Sch. Dist.,* 281 Mont. 152, 162 (1997) (concluding school policy did not violate rights to equal protection or to equal educational opportunity); *French* v. *Cornwell,* 202 Neb. 569, 571-572 (1979), citing *Braesch* v. *DePasquale,* 200 Neb. 726, 732 (1978), cert. denied, 439 U.S. 1068 (1979) (assuming, without deciding, due process protection applies, but ultimately holding due process not violated); *Butler* v. *Oak Creek Franklin Sch. Dist.,* 172 F. Supp. 2d 1102, 1110-1111 (E.D. Wis. 2001) (assumed due process applied because defendant did not argue lack of property entitlement as basis for summary judgment).

the plaintiff's eligibility, that interest is "defined by the terms of [those rules]." *Regents of State Colleges* v. *Roth, supra* at 578. The text of rule 59.1 of the MIAA Rules and Regulations Governing Athletics (as in effect July 1, 2001, through June 20, 2003) (MIAA rules) makes clear that one is entitled to participate only for "12 consecutive athletic seasons (i.e. four consecutive years) beyond the first completion of grade 8." Under this rule, the plaintiff's period of eligibility began to run once she entered her freshman year at Austin. She was allowed to participate that year, though she chose not to, and was likewise eligible for the following three years, comprising her freshman, sophomore and junior years at Andover. The plaintiff received the full benefit that rule 59.1 conferred. She had no "legitimate claim of entitlement" to further participation under the MIAA rules.[23] *Regents of State Colleges* v. *Roth, supra* at 577.

Without a property interest in her participation in extracurricular, interscholastic athletics, the plaintiff has no right to the protection of the due process clause of the Fourteenth Amendment.[24] See *Regents of State Colleges* v. *Roth, supra* at 569. Because we conclude that the plaintiff has no such interest, either as part of her recognized right to public education or under the MIAA's eligibility rules, we affirm the trial judge's decision[25] to

---

[23]Once the period of eligibility had elapsed, it is clear that the MIAA possessed considerable discretion whether to grant a waiver. Generally, a person has no property interest in the receipt of a benefit if the entity charged with distributing it has broad discretion to withhold it. See *Castle Rock* v. *Gonzales*, 545 U.S. 748, 756 (2005); *Madera* v. *Secretary of the Executive Office of Communities & Dev.*, 418 Mass. 452, 459 (1994). A person may have a property interest in a discretionary benefit if the governing rule "meaningfully channels official discretion by mandating a defined administrative outcome." *Sealed* v. *Sealed*, 332 F.3d 51, 56 (2d Cir. 2003). Although the MIAA's rule 84.2, see note 8, *supra*, provides four factors to guide its discretion, this discretion is not "meaningfully channel[ed]," because the rule "does not require a certain outcome, but merely authorizes particular actions and remedies." See *Sealed* v. *Sealed, supra*. Thus, the plaintiff has no property interest in the waiver.

[24]We therefore do not decide whether the alleged defects in the MIAA's hearing process, see note 18, *supra*, denied the plaintiff "the opportunity to be heard 'at a meaningful time and in a meaningful manner,' " as due process requires. *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976), quoting *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965).

[25]The plaintiff argues, in a footnote to her brief, that the trial judge erred by

allow judgment n.o.v. in favor of the defendant on the plaintiff's due process claim.[26]

b. *Equal protection "class of one."* The plaintiff argues that she is entitled to recover under 42 U.S.C. § 1983 because the MIAA violated her Federal equal protection rights as a "class of one" by arbitrarily singling her out for worse treatment than other similarly situated persons. See note 19, *supra.* In essence, the plaintiff's argument is that the MIAA treated her differently from other swimmers by taking into account her participation in a private swimming club during her first year of eligibility (i.e., her first ninth grade year at Austin). See *Willowbrook* v. *Olech,* 528 U.S. 562, 564 (2000). The plaintiff maintains that this reason for not granting a waiver penalized her for swimming with a private team, while others who also swam with private teams were not penalized.

The equal protection clause of the Fourteenth Amendment mandates that "all persons similarly situated should be treated alike." *Cleburne* v. *Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). However, "[w]here applicable state law vests the

refusing to adopt the conclusions of the judge who granted the plaintiff's motion for partial judgment on the pleadings regarding her claim for relief in the nature of certiorari. The motion judge's decision might, in other circumstances, have collateral effect on a subsequent trial to the extent that the judge's findings are relevant to the remaining counts. Generally, the doctrine of issue preclusion or collateral estoppel will apply only where (1) there has been a final judgment on the merits; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication, and essential to the earlier judgment. See *Kobrin* v. *Board of Registration in Med.,* 444 Mass. 837, 843-844 (2005). There is no preclusion in this case. First, the motion judge made no findings of fact that were binding on the trial judge. (Because the motion judge conducted what was essentially a judicial review, he did not make findings of fact, and was not required to do so. He ruled only as a matter of law that the agency's decision was in error.) Second, there was no final judgment entered on the certiorari count until after trial. Cf. *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.,* 439 Mass. 387, 401 (2003).

[26]The plaintiff also argues in her brief that the trial judge erred by refusing to grant her request for declaratory relief pursuant to G. L. c. 231A. See note 11, *supra.* Her only argument on this issue consists of three sentences in her brief unsupported by any authority, and does not rise to the level of adequate appellate argument under Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Accordingly, this argument is deemed waived. See *Adoption of Kimberly,* 414 Mass. 526, 536-537 (1993).

decisionmaker with discretionary authority to award or withhold a state benefit, a plaintiff who grounds an equal protection claim on the denial of that benefit faces a steep uphill climb." *Pagan* v. *Calderon*, 448 F.3d 16, 34 (1st Cir. 2006). In such cases, the plaintiff must show that "(i) he was treated differently than other similarly situated supplicants and (ii) the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness." *Id.* "[E]ven an arbitrary denial of a [discretionary benefit] in violation of state law — even in bad faith — does not rise above the constitutional threshold for equal protection . . . claims." *Baker* v. *Coxe*, 230 F.3d 470, 474 (1st Cir. 2000), cert. denied, 532 U.S. 995 (2001). There must be at least an "egregious abuse of power." See *Nestor Colon Medina & Sucesores, Inc.* v. *Custodio*, 964 F.2d 32, 44 & n.5 (1st Cir. 1991).

The plaintiff failed to meet her burden. First, the evidence presented was insufficient to show that the MIAA granted waivers with respect to other swimmers who were similarly situated to the plaintiff. It is true that the evidence at trial demonstrated that nearly half of all high school swimmers participate in both interscholastic swimming and in private swimming clubs (presumably with no adverse consequence to their eligibility under the MIAA rules). There was no evidence, however, whether any of these other swimmers had attended high school for five years, thus also running afoul of the MIAA's "fifth year student rule." The plaintiff also introduced evidence that at the time Principal Anderson sought a waiver to set aside the application of the "fifth year student rule" on behalf of the plaintiff, the MIAA granted waivers to set aside that same rule in fifty-two out of the sixty-five cases under its consideration. However, the plaintiff failed to present any evidence of the particular circumstances of these other cases. Without more information, it is impossible to determine whether the students in these other cases were similarly situated to the plaintiff. Thus, the plaintiff failed to prove the first element of her "class of one" claim.

Second, even if the plaintiff had presented evidence sufficient to prove that other similarly situated persons were granted a waiver, the plaintiff introduced no evidence tending to show that this alleged differential treatment resulted from "invidious dis-

crimination," "fundamental procedural unfairness," or a "gross abuse" of the MIAA's power. *Pagan* v. *Calderon, supra.* The plaintiff has not alleged that she was subjected to invidious discrimination, i.e., that the MIAA denied the waiver on the basis of some suspect or quasi-suspect classification. *Id.* at 35-36. Furthermore, with regard to the procedures employed, there was no evidence at trial that the MIAA failed to provide the plaintiff with the same opportunity to be heard that it provided to every other athlete for whom a waiver was sought. This procedure allowed the plaintiff to present evidence on her behalf, and the plaintiff conceded at trial that the MIAA did not "curtail [her] presentation in any way." The plaintiff's complaints about the procedures employed by the MIAA, see note 18, *supra,* are not indicative of the kind of "egregious procedural irregularities or abuse of power . . . conceivably rising to the level of a federal equal protection violation." *PFZ Props., Inc.* v. *Rodriguez,* 928 F.2d 28, 32 (1st Cir. 1991).

The burden was on the plaintiff to introduce evidence sufficient for the jury to find that she had been treated differently from other similarly situated persons, and that this treatment resulted from truly egregious procedural unfairness or an abuse of the MIAA's power. Because the plaintiff failed to meet her burden on the essential elements of her equal protection claim, the trial judge's decision to direct a verdict on that theory for the MIAA was proper. Cf. *Blais-Porter, Inc.* v. *Simboli,* 402 Mass. 269, 274 (1988). In sum, the plaintiff has failed to establish the violation of any federally protected right actionable under § 1983.[27]

2. *Claim under the Massachusetts Civil Rights Act.* The Massachusetts Civil Rights Act (act) creates remedies for "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered

---

[27]Because we conclude that the trial judge's decisions to allow the MIAA's motions for judgment n.o.v. on the due process clause claim and for directed verdict on the equal protection claim were correct, the plaintiff is not a "prevailing party" under § 1983, and thus she is not entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988(b) (2000). See *Buckhannon Bd. & Care Home, Inc.* v. *West Virginia Dep't of Health & Human Resources,* 532 U.S. 598, 602-604 (2001).

with, or attempted to be interfered with [by any person, whether or not acting under color of law, by threats, intimidation or coercion]." G. L. c. 12, § 11I, citing G. L. c. 12, § 11H. To prevail, "the plaintiff must prove that the defendant[] used 'threats, intimidation or coercion' to interfere with, or attempt to interfere with, rights secured by the Constitution or laws of the United States or the Commonwealth of Massachusetts." *Brum* v. *Dartmouth*, 428 Mass. 684, 707-708 (1999). "A 'threat' is 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.' *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994) . . . . 'Intimidation' involves putting one 'in fear for the purpose of compelling or deterring conduct.' *Id.* 'Coercion' is the application to another of force 'to constrain him to do against his will something he would not otherwise have done.' *Id.*, quoting *Deas* v. *Dempsey*, 403 Mass. 468, 471 (1988)." *Kennie* v. *Natural Resource Dep't of Dennis*, 451 Mass. 754, 763 (2008).

The plaintiff argues that the MIAA's rules constitute an attempt to dissuade her from exercising her right of access to the courts, and more specifically her right to seek judicial review of the MIAA's decision refusing to grant her a waiver. The MIAA has promulgated several rules that it concedes are intended to discourage its member schools and student athletes from litigating eligibility disputes outside the MIAA's internal hearing process. Rule 29.2 of the MIAA rules, provides that "any contest in which an ineligible student or coach participates under court order will be forfeited if the order is dissolved or the plaintiff ultimately fails to prevail." Another rule provides that students or teams participating in any contest under court order will be seeded last, imposing a competitive disadvantage on that team. See rule 29.3 of the MIAA rules. The plaintiff contends that these rules constitute an attempted interference with the enjoyment of her right to seek judicial review by "threats, intimidation or coercion," for which she has a remedy under G. L. c. 12, §§ 11H & 11I. We are not persuaded.

Although "entitled to liberal construction of its terms," *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 822 (1985), the act "was not intended to create, nor may it be construed to estab-

lish, a 'vast constitutional tort.' " *Buster* v. *George W. Moore, Inc.*, 438 Mass. 635, 645 (2003), quoting *Bell* v. *Mazza*, 394 Mass. 176, 182 (1985). It is for this reason that "[t]he Legislature 'explicitly limited the [act's] remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion.' " *Buster* v. *George W. Moore, Inc.*, *supra* at 646, quoting *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 718 (1989).

Although the MIAA has admitted that the rules are, at least in part, designed to discourage the litigation of eligibility disputes in the courts, we conclude that these rules do not constitute the kind of actionable "threats, intimidation or coercion" contemplated by the act. "Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under § 11I." *Buster* v. *George W. Moore, Inc.*, *supra* at 648, quoting *Sena* v. *Commonwealth*, 417 Mass. 250, 263 (1994). The MIAA rules merely inform athletes seeking to challenge adverse eligibility determinations that, if they force their way into competition, but are later determined to have been ineligible, the MIAA will apply its traditional rules and practices regarding ineligible athletes, i.e., that a winning team which includes an ineligible athlete must forfeit its win.[28]

Similarly, the MIAA rule that students and teams competing under court order will be seeded last may be justified as a means of ensuring that the participation of athletes whose eligibility is still unclear will not unduly prejudice the rights of the other teams whose eligibility is not in doubt. The MIAA likely anticipates that it will prevail on judicial review of its eligibility determinations, and thus it presumably seeks to seed potentially ineligible athletes and teams in the manner least likely to affect the outcome of the competition. There is nothing unlawful or unfair about either of these practices, and we do not think the Legislature intended to include them within the ambit of "threats, intimidation or coercion" prohibited by the act. We therefore conclude that the trial judge properly allowed the MIAA's mo-

---

[28]Rule 83 of the MIAA rules provides, in pertinent part, that when "a student who is later found to be ineligible" is allowed to participate in an interscholastic competition, "every competition in which the ineligible student competed" shall be forfeited.

tion for a directed verdict on the plaintiff's claim under the act.[29]

3. *MIAA's cross appeal from the grant of certiorari.* As mentioned, the MIAA seeks to cross-appeal from the entry of judgment on the pleadings for the plaintiff on the certiorari count of her complaint. However, our review of the docket reveals that the MIAA has never paid a docket fee in regard to its purported cross appeal, either in this court or, prior to our transfer sua sponte, in the Appeals Court. The MIAA's attorney also conceded at oral argument that the fee has never been paid. Earlier procedural maneuvering by both parties, which we need not detail, should have alerted the MIAA to the need to perfect its appeal by paying the fee.[30] The MIAA has provided no explanation for its failure to pay the fee, nor has it sought permission from this court to pay late, even though it sought permission from the Appeals Court to do so.

The rules of appellate procedure impose a clear duty upon "each appellant, including each cross-appellant," to "pay to the clerk of the appellate court the docket fee fixed by law" within the applicable ten-day period. See Mass. R. A. P. 10 (a) (1), as amended, 435 Mass. 1601 (2001). "[W]hen faced with such a clear violation of the rules," we have the "authority to apply sanctions, including that of refusing to consider the appeal." *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 639 (1983). Although we have discretion to consider the MIAA's cross appeal notwithstanding its failure to comply with the rules of appellate procedure, "there is a strong sense that rules of procedure ought to be followed." *Ibid.* We therefore decline to consider the cross appeal because it is not properly before us.[31] See *Marshall* v. *Stratus Pharms., Inc.*, 51 Mass. App. Ct. 667, 669 (2001).

---

[29]As is true of the § 1983 claim, the plaintiff is not entitled to attorney's fees and costs under the Massachusetts Civil Rights Act because she has not "prevail[ed]" on that claim. G. L. c. 12, § 11I. The trial judge correctly refused to award the plaintiff attorney's fees and costs. See *Brunelle* v. *Lynn Public Sch.*, 433 Mass. 179, 184 (2001).

[30]At one point, the plaintiff filed a motion to dismiss the MIAA's cross appeal for failure to pay the docket fee in a timely fashion.

[31]The plaintiff has filed a motion in this court asking us to strike the MIAA's brief in its entirety, and to bar it from oral argument, for failure to comply in various respects with Mass. R. A. P. 16, as amended, 428 Mass. 1603 (1999), and for "misrepresent[ing] the date of service." The MIAA did

We do not intend to suggest that, absent a valid claim under 42 U.S.C. § 1983 or G. L. c. 12, § 11I, the plaintiff has no right to review of an arbitrary action by the MIAA. As a State actor, the MIAA is not empowered to deal with individuals arbitrarily. In the absence of a specific statutory remedy, the plaintiff was entitled to proceed under the certiorari statute for review of the MIAA's action. However, for the reason stated, we do not address the merits of the decision of the motion judge on the subject.

4. *Conclusion.* We conclude that the plaintiff has no property interest in her participation in interscholastic athletics, and therefore, she has suffered no due process violation actionable under 42 U.S.C. § 1983. In addition, the plaintiff has failed to present sufficient evidence that, if believed, would have allowed the jury to find an equal protection violation. She has also failed to establish that the MIAA interfered with or attempted to interfere with her enjoyment of her civil rights by "threats, intimidation or coercion," as required in order to prevail under G. L. c. 12, § 11I. We therefore affirm the trial judge's allowance of the MIAA's motions for directed verdicts and for judgment n.o.v. The MIAA's cross appeal is not properly before us, and we order it dismissed.

*So ordered.*[32]

participate at oral argument, and that aspect of the plaintiff's motion is moot. We decline to strike the MIAA's brief.

While we note that the MIAA's brief fails fully to conform to the requirements of rule 16, we conclude that the MIAA's violations of the rule are not so egregious as to warrant the extraordinary sanction of striking the brief. Furthermore, the only evidence the plaintiff has presented of the MIAA's alleged misrepresentation of the date of service is that the brief was postmarked two days after the date on which the certificate was signed. There is no evidence, however, that the discrepancy was the result of intentional misrepresentation, rather than mere inadvertence, or that, at the time the MIAA's attorney signed the certificate, he knew that the brief would not be mailed on the date specified.

[32]In its brief, the MIAA requested an award of costs under Mass. R. A. P. 26 (a), 378 Mass. 925 (1979), as well as damages under Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979), on the ground that the plaintiff's appeal is "frivolous." "While we consider the [plaintiff's] arguments to be unpersuasive, we do not consider them frivolous." *Shahzade* v. *C.J. Mabardy, Inc.,* 411 Mass. 788, 797 n.8 (1992). Therefore, we deny the MIAA the relief it requests under rule 25. Pursuant to rule 26(a), we further direct that each side shall bear its own costs of appeal.