NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1432

HAMPDEN-WILBRAHAM REGIONAL SCHOOL DISTRICT & others[1]

vs.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC. (and three companion cases[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In these consolidated appeals, the defendant, Massachusetts

Interscholastic Athletic Association, Inc. (MIAA),[3] appeals from

-----

[1] Keri Lee, as next friend of Abigail Lee; Michelle DaFonseca, as next friend of Mackenzie DaFonseca; Andrew Rostek, as next friend of Annabella Rostek; Jason Suomala, as next friend of Brady Suomala; Carey Pace, as next friend of Cora Pace; Diane Diehl, as next friend of Paul Diehl; Marc Atkin, as next friend of Kyle Atkin; Sara Malo, as next friend of Shane Szado; Sarah Hull, as next friend of Natalie and Chelsea Hull; and Kimberly Nowicki, as next friend of Gianna Nowicki.

[2] Baystate Academy Charter Public School vs. Massachusetts Interscholastic Athletic Association, Inc., Hampden Super. Ct., No. 2479CV00647; Northampton Public Schools vs. Massachusetts Interscholastic Athletic Association, Inc., Hampshire Super. Ct., No. 2480CV00119; and Pioneer Valley Regional School District vs. Massachusetts Interscholastic Athletic Association, Inc., Franklin Super. Ct., No. 2478CV00073.

[3] The MIAA is "an association that regulates competitive interschool athletic programs as the authorized representative of its member school committees." Mancuso v. Massachusetts

interlocutory orders issued by Superior Court judges granting preliminary injunctions to the plaintiffs in four separate actions. See G. L. c. 231, § 118, second par. For the reasons discussed below, we reverse.

Background. The plaintiffs in the four cases, collectively, are a group of individual high school student-athletes, appearing through their adult representatives, and four western Massachusetts "school districts."[4] The plaintiff schools are members of the Pioneer Valley Interscholastic Athletic Conference (PVIAC). The plaintiff schools also are members of the MIAA which, among other things, organizes Statewide tournaments. Schools that become MIAA members agree to be bound by and enforce the rules and regulations governing

_Interscholastic Athletic Ass'n, Inc_., 453 Mass. 116, 118-119 (2009). See G. L. c. 71, § 47 (MIAA "may supervise and control all athletic and other organizations composed of public school pupils . . . It may directly or through an authorized representative determine under what conditions the same may compete with similar organizations in other schools").

[4] MIAA notes that it governs interscholastic high school sports in the Commonwealth, and thus its members are individual high schools such as plaintiff Baystate Academy Charter Public School, and not school districts. For purposes of this appeal, however, MIAA does not dispute that the named school districts "are appropriate party-representatives" for Minnechaug High School, Pioneer Valley High School, and Northampton High School. For ease of reference, we refer to the plaintiffs in the four cases collectively as the plaintiff schools or the plaintiffs.

athletics contained in the MIAA handbook (MIAA rules or MIAA handbook).

For over twenty years, MIAA policy has required that all member schools submit their athletic schedules by a certain date.  Furthermore, according to MIAA, it "has been and continues to be" MIAA's policy that when there are tournaments in which a member school team intends to participate but does not know the identify of a specific opponent, the member school must nevertheless include the potential game on its schedule as "TBD" or "TBA."

In 2021, MIAA replaced regional tournaments with Statewide tournaments; however, PVIAC continued to hold its own league tournaments for its western Massachusetts members, and mandated that members play in these games or non-playoff alternative games (PVIAC games).  Consistent with its above-referenced policy, MIAA took the position (both prior to and in the present litigation) that PVIAC games are part of the plaintiff schools' regular seasons and must be listed as "TBA" or "TBD" on the schedule submitted to MIAA at the beginning of the season. Despite various reminders regarding the schedule submission deadline and procedure, the plaintiff schools did not include

the PVIAC games[5] on their fall 2024 schedules submitted to the MIAA.[6]  As a result, MIAA took the position that the PVIAC games not appearing on the schedules could not be played.[7]  In October 2024, the MIAA and the PVIAC reached an agreement that the teams that did not list the PVIAC games could still play those games; however, those teams would receive a penalty in the form of a 0-3 forfeit loss regardless of the outcome of the game.  In the event that both teams had failed to list the PVIAC games on their schedules, both teams would have to record the game as a "[n]o [c]ontest."  The PVIAC-MIAA agreement sought to enforce rule 34.6 of the MIAA handbook.[8]

The plaintiffs brought four separate actions in the Superior Court against the MIAA alleging breach of contract and

---

[5] These included, inter alia, games for boys' and girls' soccer teams, girls' volleyball teams, and the girls' field hockey team from certain member schools.

[6] Sixteen out of fifty-nine PVIAC member teams, including the plaintiffs herein, failed to include PVIAC tournament games on their schedules.

[7] Scheduling deadlines are strictly enforced to ensure that all MIAA member schools are treated equally and that all scores and records are accurately recorded throughout the season.  The deadlines are intended to prevent member schools from "gaming the system and canceling or adding games to their schedules to better position their teams in the power rankings."

[8] Rule 34.6 of the MIAA handbook provides, in relevant part, that "[a]ny school overscheduling must forfeit the overscheduled game(s) listed on their originally committed schedule. . . . **Overscheduling forfeits cannot be appealed.**"

4

breach of the covenant of good faith and fair dealing, and seeking, injunctive relief, damages, and attorney's fees. Two different judges issued orders in the four cases allowing the plaintiffs' motions for temporary restraining orders and preliminary injunctions restraining the MIAA from recording the outcomes of the games in any manner other than the actual score; three of the orders expressly required the MIAA to determine State tournament eligibility based on the correct and accurate game results. Otherwise stated, the judges ordered MIAA to "record the actual teams' scores" (for the forfeited PVIAC games not appearing on the schedules as "TBA" or "TBD") as the actual results. In essence, the judges found that (1) "MIAA Rules and Regulations do not specifically detail the process of completing athletic schedules for both seasonal and post season," and (2) despite the notice provided by MIAA to the athletic directors and other school officials, the "TBA" and "TBD" placeholder requirements were arbitrary and capricious. The injunctions did not impact any teams from qualifying (or not qualifying) for the 2024 Statewide tournaments. The injunctions did, however, affect the previously announced power rankings and seedings of various MIAA schools for the tournaments. MIAA appeals from the orders.

Discussion. MIAA argues, inter alia, that the judges abused their discretion in allowing the motions for preliminary

5

injunctions because the plaintiffs failed to establish a likelihood of success on the merits of their claims, failed to allege or prove the existence of an enforceable contract, failed to demonstrate that MIAA's action were arbitrary and capricious, and failed to demonstrate irreparable harm.  The plaintiffs argue that the claims are moot, but if not, the judges did not abuse their discretion.

1.  Mootness.  The plaintiffs ask us to dismiss the matter as moot because the fall 2024 interscholastic athletic season impacted by the terms of the preliminary injunctions has ended, the tournament games have been played, and the final rankings, titles, and awards have been determined and distributed.  "Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome" (citation omitted).  Aquacultural Research Corp. v. Austin, 88 Mass. App. Ct. 631, 633 (2015).  A party no longer has a personal stake in a case "where a court can order 'no further effective relief.'"  Branch v. Commonwealth Employment Relations Bd., 481 Mass. 810, 817 (2019), cert. denied, 589 U.S. 1133 (2020), quoting Lawyers' Comm. for Civ. Rights & Economic Justice v. Court Adm'r of the Trial Court, 478 Mass. 1010, 1011 (2017).  In general, courts decline to hear moot cases because:

> "(a) only factually concrete disputes are capable of resolution through the adversary process, (b) it is feared that the parties will not adequately represent positions in

6

which they no longer have a personal stake, (c) the adjudication of hypothetical disputes would encroach on the legislative domain, and (d) judicial economy requires that insubstantial controversies not be litigated."

Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975).

MIAA, by contrast, claims that both it and the member schools have a continuing stake in the outcome of this appeal. Relying on and quoting Abner A. v. Massachusetts Interscholastic Athletic Ass'n, 490 Mass. 538, 541 (2022), MIAA argues that "the fact that [it] has the ability 'to impose retroactive penalties upon the school [members]' avoids mootness."

Although there is a measure of persuasiveness to the plaintiffs' argument, precedent compels the conclusion that the present case is not moot. In Abner A., the Supreme Judicial Court recognized that in certain circumstances MIAA rules allow it to impose retroactive penalties upon a school, and specified that, in the circumstances of that case, MIAA Rule 29.2 authorized such penalties.[9]  See Abner A., 490 Mass. at 541. Likewise, in the present case, MIAA Rule 34.6 provides that "[a]ny school overscheduling must forfeit the overscheduled game(s) listed on their originally committed schedule," and that "[o]verscheduling forfeits cannot be appealed."  The preliminary

---

[9] "MIAA Rule 29.2 provides that 'any contest in which an ineligible student or coach participates under court order will be forfeited if the order is dissolved or the plaintiff ultimately fails to prevail.'"  Abner A., 490 Mass. at 541.

7

injunctions entered in these cases precluded the forfeits from being imposed.  Thus, just as in Abner A., supra "enforcement of this rule (which is prohibited under the terms of the preliminary injunction[s]) would have an impact on the school's record of wins and losses," and therefore on the power rankings and seedings for the MIAA Statewide tournaments.  Under these circumstances, the "MIAA rules allow the MIAA to impose retroactive penalties," including adjusting the records of the plaintiffs' teams to reflect forfeiture.  Id.  Thus, the parties retain a personal stake in the outcome of this litigation.

Even assuming, arguendo, that the present cases are moot, "mootness alone does not necessarily mean that the matter should be dismissed, because it may be capable of repetition, yet evading review" (quotation and citation omitted).  Abner A., 490 Mass. at 541.  Here, the scheduling disputes at issue in these cases were not limited to only one school.  Rather, sixteen out of fifty-nine PVIAC member teams, including the four plaintiffs herein, failed to include PVIAC tournament games on their schedules.  That fact alone suggests that the scheduling concerns at issue in these cases are not isolated and are capable of repetition.  See id. at 542 ("similar requests for review of MIAA eligibility determinations have been made by other students, and are virtually certain to be filed in the future").  Furthermore, "as evident in the circumstances here,

8

the process of appellate review would likely extend well beyond the length of a high school athletic season, which generally spans only a few months."  Id.  Accordingly, we decline the invitation to dismiss the present matter as moot.

2.  Merits.  We review the allowance or denial or a preliminary injunction for abuse of discretion.  See Abner A., 490 Mass. at 545.  To prevail on a motion for a preliminary injunction, the moving party must demonstrate a likelihood of success on the merits; that the moving party faces a substantial risk of irreparable harm if the injunction is denied; and "that this risk of irreparable harm, considered in light of the moving party's chances of prevailing on the merits, outweighs the nonmoving party's probable harm" (citation omitted).  Id.

Here, the plaintiffs' complaints allege breach of contract and breach of the covenant of good faith and fair dealing.[10]  The plaintiffs' claims suffer from a clear shortcoming:  their complaints, arguments, and briefing fail to allege and specify what contract provision, if any, was violated.  At oral argument, the plaintiffs suggested that rule 32.1 of the MIAA

---

[10] Challenges to alleged arbitrary action by MIAA, "[i]n the absence of a specific statutory remedy," Mancuso, 453 Mass. at 134 may proceed under the certiorari statute.  See G. L. c. 249, § 4; Abner A., 490 Mass. at 545.  Here, by contrast, the plaintiffs framed their causes of action as ones for breach of contract and breach of the covenant of good faith and fair dealing.

handbook, a provision requiring the members of MIAA to "read[,] understand, abide by, and be prepared to enforce all rules, regulations, and policies contained within [the MIAA] Handbook," was violated. We disagree. Conclusory allegations of breach of contract are insufficient, as a party must identify the specific contractual obligation alleged to have been violated. See Pollock v. New England Tel. & Tel. Co., 289 Mass. 255, 261 (1935). See also Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007) (to state a viable breach of contract claim under Massachusetts law, plaintiffs must "do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep"); Doyle v. Hasbro, Inc., 103 F.3d 186, 194-195 (1st Cir. 1996) (same). Rule 32.1 was not identified in the complaints as a basis for the plaintiffs' claims. Furthermore, the plaintiffs did not articulate in the Superior Court, with the requisite specificity, how MIAA Rule 32.1 or any particular contractual term was violated. Indeed, the plaintiffs have neither alleged nor articulated any language imposing a concrete, enforceable obligation that MIAA purportedly violated, nor explained how MIAA Rule 32.1 translates into a discrete contractual duty that MIAA itself could have violated. Absent identification of a specific provision and the manner in which it was violated, we

10

cannot agree that the plaintiffs demonstrated a likelihood of success on the merits of their contract-based claims.[11, 12]

To be clear, we do not hold that the plaintiffs had no potential recourse against the MIAA. See, e.g., note 12, supra.

_____

[11] The plaintiffs' claims of breach of the covenant of good faith and fair dealing fail for the same reason. Indeed "[e]very contract implies good faith and fair dealing between the parties to it. However, the covenant does not create new rights and duties not already provided for in the contract" (citations and quotation omitted). Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 586 (2024). The plaintiffs failed to identify what duty MIAA affirmatively violated and are thus seeking to create new rights and duties in the contract.

[12] The plaintiffs argue that the judges were correct in allowing the preliminary injunction in view of one judge's finding that "the process for school sports schedule submission must be clearly stated in the Rules and Regulations of MIAA as notice for member schools to follow and avoid confusion," and thus the "MIAA decision to exclude [p]laintiffs['] actual game scores in post season tournament games is arbitrary and capricious." While there may be some persuasiveness to this argument, it does not allege, much less demonstrate, a breach of contract. To the contrary, the argument centers on alleged conduct outside of the contract. See note 11, supra. Furthermore, it is axiomatic that to obtain a preliminary injunction, the applicant must show a likelihood of success on the merits of the underlying claim, Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-622 (1980), and injunctive relief "is a remedy, and not a cause of action." Mullins v. Corcoran, 488 Mass. 275, 286 n.16 (2021). Where the plaintiffs have not demonstrated a likelihood of success on the merits of their underlying breach of contract claims, their requests for injunctive relief likewise fail. See id. In any event, on the record before us, we do not agree with the judge's determination that MIAA's decision was "bereft of any rationale." See Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016) (decision is arbitrary or capricious such that it constitutes abuse of discretion where it "lacks any rational explanation that reasonable persons might support" [citation omitted]).

Rather, we hold only that as pleaded and argued here, the plaintiffs have failed to meet their burden to demonstrate a likelihood of success on the merits.[13]  See Pollock, 289 Mass. at 261.[14, 15]

Conclusion.  The orders allowing the motions for temporary restraining orders and preliminary injunctions are reversed, and

---

[13] Where we determine that the plaintiffs failed to establish a likelihood of success on the merits of their claims, we need not reach the other elements needed to obtain a preliminary injunction.  See Foster v. Commissioner of Correction, 484 Mass. 698, 712 (2020) ("[T]he movant's likelihood of success is the touchstone of the preliminary injunction inquiry. . . .  [Without it], the remaining factors become matters of idle curiosity").

[14] Our holding should not be construed to suggest that the MIAA's relationship with its member schools is not contractual. We do not reach that issue.

[15] We recognize the Superior Court judges' thoughtful analyses, and the emergency nature of the proceedings before them as well as the time and resource constraints associated therewith.

the injunctions are dissolved.  The cases are remanded to the Superior Court for further proceedings.[16]

So ordered.

By the Court (Blake, C.J.,
Neyman & Grant, JJ.[17]),

Clerk

Entered:  March 25, 2026.

---

[16] Despite our determination that the present case is not moot, in these particular circumstances, where the fall 2024 interscholastic athletic season has ended more than two years ago, the tournament games have been played, and the final rankings, titles, and awards have been determined and distributed, it is difficult to discern any benefit to either party of further litigating these matters in the Superior Court. Nonetheless, that determination is, of course, left to the parties.

[17] The panelists are listed in order of seniority.